Tyson J. WILKIE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 14A04–0401–CR–8.

Court of Appeals of Indiana.

Aug. 18, 2004.

Transfer Denied Nov. 10, 2004.

---

J. Dirk Carnahan, Vincennes, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

In October 2003, Tyson Wilkie pleaded guilty to two counts of Causing Death When Operating a Motor Vehicle With a Schedule I Controlled Substance in the Body, both as Class C felonies. The trial court sentenced Wilkie to the maximum sentence of eight years on each count and ordered him to serve those sentences concurrently. Wilkie now appeals and raises the following issues for review:

1. Whether the trial court abused its discretion when it imposed the eight-year sentence.

2. Whether Wilkie's eight-year sentence is inappropriate in light of the

nature of the offense and his character.

3. Whether the trial court abused its discretion when it denied Wilkie's request that he be given pre-trial credit for 299 days he spent on home detention prior to sentencing.

We affirm.

## FACTS AND PROCEDURAL HISTORY

During the late morning of July 10, 2002, Wilkie was driving his Firebird southbound on State Road 57 when he crossed the center line and collided with a coal truck traveling in the northbound lane. Wilkie's Firebird began to spin and hit the northbound vehicle of Aaron Sims head-on. Gart Salmon, Wilkie's best friend, and A.W., Wilkie's younger brother, were both passengers in Wilkie's vehicle when the collision occurred. Both Sims and Salmon were killed, and Wilkie and A.W. sustained injuries. In particular, Wilkie suffered a broken neck, a broken back, and brain injuries. Emergency crews transported Wilkie to Deaconess Hospital in Evansville, where he tested positive for marijuana. On the day of the accident, Wilkie was driving on a suspended license.

In August 2002, the State charged Wilkie with two counts of causing death when operating a motor vehicle while intoxicated, as Class C felonies; two counts of reckless homicide, as Class C felonies; driving while suspended, a Class A misdemeanor; and reckless driving, a Class B misdemeanor. In late August, the State released Wilkie to home detention. In June 2003, Wilkie returned to jail until his sentencing in December 2003.

In October 2003, Wilkie pleaded guilty to two counts of Class C causing death when operating a motor vehicle with a Schedule I controlled substance in the body. In exchange for Wilkie's plea, the State agreed to dismiss the remaining charges. The parties also agreed that sentencing on each count would be left to the trial court, but that Wilkie would serve the sentences imposed concurrently.

Prior to sentencing, Wilkie's counsel submitted a pre-sentence memorandum in which he proffered several mitigating factors and asserted that he should be given pre-trial credit for the 299 days he spent on home detention. Wilkie also contended that the presumptive term of four years was appropriate. The State argued that the trial court should impose the maximum sentence of eight years on each count to run concurrently.

The trial court identified two aggravating factors: (1) the risk that Wilkie would commit another crime, and (2) he was in need of rehabilitation best provided by incarceration. The court identified no mitigating factors. The court then sentenced him to eight years on each count and, consistent with the plea agreement, ordered Wilkie to serve those terms concurrently.[1] Wilkie now appeals.

## DISCUSSION AND DECISION

### Issue One: Aggravators and Mitigators

We first address Wilkie's argument that the trial court abused its discretion when it imposed sentence. Specifically, Wilkie asserts that (1) the trial court failed to acknowledge several proffered mitigating factors, (2) the aggravating factors identi-

---

1. A person who commits a Class C felony shall be imprisoned for a fixed term of four (4) years, with not more than four (4) years added for aggravating circumstances or not more than two (2) years subtracted for mitigating circumstances. Ind.Code § 35–50–2–6(a).

fied by the court are not supported by the record, and (3) the court failed to engage in a proper balancing of the aggravators and the mitigators. We address those arguments in turn.

■■■■ Sentencing decisions lie within the sound discretion of the trial court, and we reverse only for an abuse of that discretion. *O'Neill v. State*, 719 N.E.2d 1243, 1244 (Ind.1999). When a trial court imposes an enhanced sentence, it must identify all of the significant aggravating and mitigating factors, state the specific reason why each factor is considered aggravating or mitigating, and articulate its evaluation and balancing of those factors. *Brown v. State*, 760 N.E.2d 243, 245 (Ind.Ct.App. 2002), *trans. denied*. A single aggravating factor is sufficient to justify an enhanced sentence. *Lewis v. State*, 759 N.E.2d 1077, 1087 (Ind.Ct.App.2001), *trans. denied.*[2]

### A. Mitigating Factors

■■■■ A finding of mitigating circumstances, like sentencing decisions in general, lies within the trial court's discretion. *See Widener v. State*, 659 N.E.2d 529, 533 (Ind.1995). The trial court is not obligated to find mitigating factors or explain why it has chosen not to do so. *Antrim v. State*, 745 N.E.2d 246, 248 (Ind.Ct.App.2001). A trial court must include mitigators in its sentencing statement only if they are used to offset aggravators or to reduce the presumptive sentence, and only those mitigators found to be significant must be enumerated. *Battles v. State*, 688 N.E.2d 1230, 1236 (Ind.1997). In addition, the trial court is not required to give the same weight or credit to mitigating evidence as does the defendant. *Fugate v. State*, 608 N.E.2d 1370, 1374 (Ind.1993). Although a trial court must consider evidence of mitigating circumstances presented by the defendant, it is not obligated to explain why it has found that the mitigator does not exist. *Allen v. State*, 722 N.E.2d 1246, 1252 (Ind.Ct.App.2000). Indeed "the 'proper' weight to be afforded by the trial court to the mitigating factors may be to give them no weight at all." *Ross v. State*, 676 N.E.2d 339, 347 (Ind.1996).

■■■■ Here, the trial court did not find any mitigating circumstances. Wilkie asserts that the court abused its discretion in that regard and claims that the court overlooked several significant mitigating factors.[3] First, Wilkie claims that the trial court abused its discretion when it failed to find his guilty plea as a mitigating factor. However, not every guilty plea must be credited as a mitigating circumstance. *See Trueblood v. State*, 715 N.E.2d 1242, 1257 (Ind.1999), *cert. denied*, 531 U.S. 858, 121 S.Ct. 143, 148 L.Ed.2d 94 (2000). And the trial court addressed that proffered mitigator at sentencing as follows:

> I do not consider pleading guilty as a mitigating circumstance. I mean, the defendant [chose] to plead guilty. I don't think in this instance it helps the victims or the families at all. I mean, you can't do anything to the victim, whether you plead guilty or deny it. I mean, the victim is in the same position,

---

**2.** On June 24, 2004, after briefing was completed in this case, the United States Supreme Court issued its opinion in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). We are mindful of that decision, but we leave for another day whether and, if so, to what extent *Blakely* may affect a trial court's finding of aggravators to support an enhanced sentence and our review of that sentence under Indiana Appellate Rule 7(B).

**3.** To the extent that some of Wilkie's proffered mitigating factors overlap, we discuss those together.

the actual victim, so I don't consider that a mitigating circumstance.

Transcript at 39. Thus, the trial court considered Wilkie's guilty plea but decided not to give that proposed mitigator any weight. *See Ross,* 676 N.E.2d at 347. The court acted within its discretion in that regard.

In a similar argument, Wilkie asserts that the trial court should have found his remorse to be mitigating. In support, he directs us to his statements during the sentencing hearing that he is sorry for what happened and wishes that he could trade places with the two victims. But in the Pre–Sentence Investigation Report, Chief Probation Officer Beth O'Brian stated that during her interview with Wilkie, "[t]he defendant did not express much remorse for his actions." Appellant's App. at 247. While Wilkie mentioned the loss of his best friend to O'Brian, she noted that he "failed to acknowledge the second victim at any time during [the] interview." *Id.* Moreover, the trial court was able to observe Wilkie first-hand at the sentencing hearing and, thus, is a much better judge of his demeanor and sincerity. Regarding Wilkie's expressed remorse, the court stated:

> I really don't consider remorse … a mitigating circumstance. I mean, quite frankly, everyone when they get to this point is going to be sorry. You are sorry for all sorts of reasons, you know, most of all, probably, what's going to happen to you, and that's only natural.

Transcript at 39. Based on that statement, it is reasonable to infer that the trial court did not believe that Wilkie's remorse was genuine, and we will not second-guess the trial court on such credibility determinations. The trial court did not abuse its discretion when it decided not to give Wilkie's alleged remorse any mitigating weight.

Next, Wilkie makes several arguments related to his alleged lack of criminal history, general character, and history of a law-abiding life. Specifically, Wilkie points out that he has only one misdemeanor conviction and that the trial court should have found his criminal history, or lack thereof, as mitigating. To the contrary, however, the trial court considered Wilkie's criminal history, which consists of one conviction but seven prior charges, when it identified aggravating factors and explained in relevant part as follows:

> In considering aggravating circumstances, I can consider the risk that you would commit another crime, and I can certainly consider arrests as other crimes. I do not necessarily consider—I mean, the fact that there are not convictions, I can still consider the arrests. One thing, Mr. Wilkie, that bothers me about your record, very seriously, is that this charge was filed August 27, 2003, and on January of 2002, in Monroe County, you were charged with Operating a Vehicle While Intoxicated Endangering a Person, and Operating a Vehicle While Intoxicated With a B.A.C. of .08 of More. Now, [your attorney] indicates this has been dismissed, but it could have been dismissed for a variety of reasons. You were still charged with that, and right or wrong, that would scare me to death, so, you know, obviously it didn't keep you from doing the second [offense] involving, basically, the same type of things, except a little more serious,…. You have several charges which have been dismissed. To me, this indicates that you need rehabilitation that will best be served by incarceration, because you were allowed to be on the pre-trial diversion program twice, you were placed on probation once or twice, and none of these things seemed to affect you or keep you from committing

another crime. I mean, these are not horrendous crimes, but you finally ended up doing that, so, I would say that you need rehabilitation, which is best provided by incarceration....

Transcript at 40–41. The trial court did not abuse its discretion when it refused to find Wilkie's criminal history as a mitigating factor.

■■■ Wilkie also claims that the evidence shows that there is little or no risk of his re-offending. In support, he again directs us to his testimony at the sentencing hearing in which he stated that because of the medication he takes to prevent seizures, he cannot use marijuana in the future. He also points to his remorse as evidence that he is unlikely to re-offend. But similar to Wilkie's claim of remorse, the trial court considered and rejected Wilkie's assertion that he will not use drugs in the future. Specifically, the court stated:

Turning my attention to another thing that Mr. Wilkie said on the stand, he takes his medication, therefore, he can never take illegal drugs again. Well, I don't know about you, Mr. Wilkie, but I'm sure a lot of people in this courtroom know people with heart conditions, artery conditions, they smoke, they drink. I have smoked myself when I knew I shouldn't with [an] artery condition. So, this doesn't guarantee anything to me. You also drove when, in fact, you didn't have a license, so you are not strictly going by the law at all times.

Id. at 39–40. Once again, the trial court acted within its discretion when it chose not to find credible Wilkie's assertion that he would not re-offend because of his medications and his remorse.

■■■ Further, Wilkie discusses many of the mitigating factors listed under Indiana Code Section 35–38–1–7.1(c) and claims that there is evidence in the record regarding those factors. But none of his arguments on those factors is convincing. For example, he directs us to the statutory mitigating factor that "the crime neither caused nor threatened serious harm to persons or property or the person did not contemplate that it would do so," I.C. § 35–38–1–7.1(c)(1), and asserts that because there is no evidence that he contemplated the deaths of two persons when he ingested marijuana, the court should consider that as mitigating. But as the State points out, a lack of intent to cause death is irrelevant to the crimes to which Wilkie pleaded guilty. See Ind.Code § 9–30–5–5(a) (stating person who causes death of another when operating vehicle with controlled substance listed in schedule I in body commits Class C felony). Thus, we agree with the State that that mitigating factor does not apply.

Wilkie also contends that the court should have found as mitigating that the crime was the result of circumstances unlikely to recur, see I.C. § 35–38–1–7.1(c)(2), but that argument is identical to his claim that he is unlikely to re-offend, which the trial court rejected. Indeed, many of Wilkie's remaining arguments regarding mitigating factors listed under Indiana Code Section 35–38–1–7.1(c) are substantially similar to factors already discussed above and which the trial court properly rejected. See I.C. § 35–38–1–7.1(c)(6) (person has led law-abiding life); 35–38–1–7.1(c)(7) (person likely to respond to probation); 35–38–1–7.1(c)(8) (person unlikely to commit another crime).

■■■ The final two mitigating factors Wilkie proffered are: (1) he will make restitution to the victims; and (2) imprisonment will result in undue hardship on him. See I.C. § 35–38–1–7.1(c)(9), (10). In support of these mitigating factors, Wilkie directs us to his testimony that he

will seek employment upon his release and make restitution to the victims' families and insurance companies. He also contends that because of the nature and seriousness of his injuries, in addition to the "mental affects" of the death of his best friend, prison will impose an undue hardship on him. Brief of Appellant at 17. But we cannot conclude that either of those circumstances, if at all mitigating, qualify as significant mitigating factors. Accordingly, the trial court did not abuse its discretion when it refused to find such factors as mitigating. *See Battles,* 688 N.E.2d at 1236 (stating trial court must enumerate only those mitigators found to be significant).

## B. Aggravating Factors

■ Next, Wilkie claims that the evidence does not support the aggravating factors identified by the trial court. While Wilkie's argument on this issue contains citations to the record, he does not support his argument with proper citations to authority. *See* Ind.App. R. 46(A)(8)(a). Thus, Wilkie has failed to present cogent argument and has waived his claim on appeal. *See Harrison v. State,* 707 N.E.2d 767, 777 (Ind.1999) (stating failure to present cogent argument results in waiver), *cert. denied.* 529 U.S. 1088, 120 S.Ct. 1722, 146 L.Ed.2d 643 (2000).

■ Waiver notwithstanding, the trial court's statements during the sentencing hearing clearly set forth the evidence on which it relied in determining the presence of the two aggravating factors. The information contained in the Pre–Sentence Investigation Report, in addition to the testimony at the sentencing hearing, supports the aggravating factors identified by the court. The trial court did not abuse its discretion when it found two aggravating factors, and those aggravators justify the court's imposition of an eight-year sen-

tence. *See Lewis,* 759 N.E.2d at 1087 (stating single aggravating factor is sufficient to justify enhanced sentence).

## C. Balancing

The trial court did not identify any mitigating factors, and we have already determined that the court did not abuse its discretion in that regard. Thus, a balancing of the aggravating and mitigating factors would have been futile. Moreover, the trial court indicated in its written sentencing order that the aggravating factors outweighed the mitigating circumstances. Thus, Wilkie's attack on the trial court's balancing of the aggravating and mitigating factors lacks merit.

## Issue Two: Indiana Appellate Rule 7(B)

■ Wilkie next asserts that his eight-year sentence is inappropriate. Under Article VII, Section 6 of the Indiana Constitution, we have the constitutional authority to review and revise sentences. *Foster v. State,* 795 N.E.2d 1078, 1092 (Ind.Ct.App.2003), *trans. denied.* However, we exercise with great restraint our responsibility to review and revise sentences, recognizing the special expertise of the trial bench in making sentencing decisions. *Id.* A sentence that is authorized by statute will not be revised unless it is inappropriate in light of the nature of the offense and the character of the offender. *Id.* (citing Ind. Appellate Rule 7(B)).

■ Initially, the State asserts that because he pleaded guilty pursuant to a plea agreement, Wilkie is barred from challenging the appropriateness of his sentence. In support, the State directs us to our recent decision in *Gist v. State,* 804 N.E.2d 1204, 1206 (Ind.Ct.App.2004). In that case, we addressed a defendant's claim that his sentence was inappropriate and there, as in this case, the defendant ap-

pealed his sentence after having pleaded guilty. The plea agreement in *Gist* provided in part that (1) the State would recommend to the trial court that the defendant be sentenced, at most, to the presumptive term of ten years, and (2) that the State acknowledged that its representation that it would not recommend more than the presumptive term was an inducement to the defendant to enter into the agreement. *Id.* The trial court sentenced the defendant to ten years, consistent with the State's recommendation, and the defendant asserted that his ten-year sentence was inappropriate. *Id.* In analyzing that claim, we stated that "[a] plea agreement is contractual in nature and binds the defendant, the State, and the trial court." *Id.* We then determined:

> By entering into [the] agreement with the State, Gist necessarily agreed that a ten-year sentence was appropriate. If Gist thought that a ten-year sentence was inappropriate, then presumably he would not have entered into the plea agreement in the first place. Where, as here, a defendant is sentenced in accordance with a plea agreement—an agreement he voluntarily entered into, we cannot say that the sentence is inappropriate.

*Id.* at 1206–07.

*Gist* is distinguishable because unlike the plea agreement in that case, the agreement here did not contain a provision in which the State (1) agreed to limit its sentencing recommendation to the presumptive term, and (2) acknowledged that the defendant was induced to enter into the agreement based on that sentencing recommendation. Rather, Wilkie's plea agreement provides in relevant part that "[t]he defendant understands a person who commits a[C]lass C felony shall be imprisoned for a fixed term of four years with not more than four years added for aggra-

vating circumstances or not more than two years subtracted for mitigating circumstances." Appellant's App. at 211. In other words, Wilkie's plea agreement contained boilerplate language regarding the possible sentencing range for the class of offense to which he was pleading guilty. By signing an agreement in which he attested only that he understood the range of sentences which the trial court could impose by law, Wilkie did not in any way agree that a maximum sentence was appropriate.

■ Further, we disagree with the decision in *Gist* to the extent that it suggests that anytime a defendant voluntarily enters into a plea agreement, that defendant is thereafter barred from challenging his sentence as inappropriate. *See id.* at 1206 ("Where, as here, a defendant is sentenced in accordance with a plea agreement—an agreement he voluntarily entered into, we cannot say that the sentence is inappropriate."). In particular, we cannot agree with *Gist's* interpretation of our decision in *Mann v. State*, 742 N.E.2d 1025 (Ind.Ct. App.2001), *trans. denied.* The panel in *Gist* stated that its holding "is consistent with [*Mann*], where we said that a sentence fell within the sentencing range provided for in the plea agreement was not manifestly unreasonable even though the defendant was sentenced at the upper end of that range." 804 N.E.2d at 1207 (citation omitted). However, the only discussion in *Mann* of the defendant's "manifestly unreasonable" challenge appeared in a footnote and provided:

> Because we remand for correction of Mann's sentence, we do not address his implicit premise that a sentence to which a defendant has agreed in a plea bargain can be "manifestly unreasonable." Mann entered into a plea agreement that provided the trial court could impose a sentence between thirty and fifty

years. Mann's sentence of fifty years, although at the upper end of his agreement, was still within the agreement. 742 N.E.2d at 1026 n. 1. Accordingly, the panel in *Mann* did not, in fact, determine whether Mann's sentence was manifestly unreasonable.[4] Today, we squarely address the question left open in *Mann* and hold that where a defendant enters into a plea agreement and, pursuant to that agreement, attests *only* that he understands that the trial court will sentence him in accordance with statute, the defendant does not necessarily agree that a maximum sentence is appropriate and does not waive appellate review of his sentence under Indiana Appellate Rule 7(B).

Still, if a defendant signs a plea agreement in which he agrees to a specific term of years, or to a sentencing range other than the range authorized by statute,[5] he will not be able to claim thereafter that a sentence imposed consistent with the agreement is inappropriate. And although we take issue with the broad language that appears in *Gist*, we agree with the result in that case where the State agreed to recommend the presumptive term, the defendant expressly acknowledged that the State's recommendation induced him to plead guilty, and the trial court imposed the presumptive term. But we reject the idea that a defendant can "agree" to be sentenced in accordance with the statutory range applicable to his offense and, as a result of that agreement, be barred from claiming that the trial court's decision to impose the maximum sentence is inappropriate under Appellate Rule 7(B).[6]

■ Having determined that Wilkie may challenge the appropriateness of his sentence, we examine the nature of the offense and Wilkie's character to determine whether a sentence of eight years is inappropriate. *See* Ind.App. R. 7(B). Wilkie asserts that his was not one of the worst offenses and that he is not one of the worst offenders. But as we explained in *Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct.App.2002), *trans. denied*:

There is a danger in applying ["the worst offense and worst offenders"] principle that is illustrated in the instant case. If we were to take this language literally, we would reserve the maximum punishment for only the single most heinous offense. In order to determine whether an offense fits that description, we would be required to compare the facts of the case before us with either those of other cases that have been previously decided, or—more problematically—with hypothetical facts calculated to provide a "worst-case scenario" template against which the instant facts can be measured. If the latter were done, one could always envision a way in which the instant facts could be worse. In such case, the worst manifestation of any offense would be hypothetical, not real,

4. Like the plea agreement in this case, the agreement in *Mann* provided that the trial court could impose a sentence of not less than thirty years nor more than fifty years, which is the statutory sentencing range for a Class A felony. *Mann*, 742 N.E.2d at 1026.

5. For example, if Wilkie had agreed that the trial court could impose a sentence of not less than four years but not more than six years on his Class C felony conviction, he could not have challenged a six-year sentence had the court imposed it.

6. We reject the State's contention that Wilkie may not challenge his sentence because of comments he made during the sentencing hearing. Our review of Wilkie's testimony as a whole shows that he believed that the trial court should impose four years executed and four years suspended to probation. Wilkie's counsel, however, asked the trial court to impose the presumptive term of four years.

and the maximum sentence would never be justified.

This leads us to conclude the following with respect to deciding whether a case is among the very worst offenses and a defendant among the very worst offenders, thus justifying the maximum sentence: *We should concentrate less on comparing the facts of this case to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character.*

(Emphasis added).

Wilkie's actions resulted in the death of two persons, as well as injuries to his minor brother. The pre-sentence investigation report lists a litany of charges that have been filed against Wilkie over the years, some of which involve his driving in an impaired state. We agree with the trial court's statements that Wilkie has had many opportunities to learn from his past mistakes, but he has failed to take advantage of those opportunities. Rather, he continued his criminal behavior with dire consequences. We conclude that an eight-year sentence is not inappropriate.

### Issue Three: Pre–Trial Credit

Finally, Wilkie contends that the trial court abused its discretion when it failed to give him pre-trial credit for the 299 days he spent on home detention prior to sentencing. As our supreme court noted in *Purcell v. State*, 721 N.E.2d 220, 224 n. 6 (Ind.1999), "a trial court is within its discretion to deny a defendant credit toward sentence for pre-trial time served on home detention." The court further explained that "a defendant is only entitled to credit toward sentence for pre-trial time served in a prison, jail or other facility which imposes substantially similar restrictions upon personal liberty." *Id.* More-

over, in in *Molden v. State*, 750 N.E.2d 448, 451 (Ind.Ct.App.2001), this court determined that a trial court did not abuse its discretion when it denied credit time under Indiana Code Section 35–50–6–3 to a defendant who was confined in home detention while awaiting trial.

In support of his contention that he should have been given credit for his home detention, Wilkie relies on cases in which home detention was ordered as part of an executed sentence, *see Purcell*, 721 N.E.2d at 221, and as a term of probation. *See Dishroon v. State*, 722 N.E.2d 385, 386 (Ind.Ct.App.2000), *superseded by* Ind.Code § 35–38–2–3(h). Those cases do not involve pre-trial credit under Indiana Code Section 35–50–6–3(a) and, thus, are not applicable. The trial court did not abuse its discretion when it refused to give Wilkie pre-trial credit for the 299 days he spent on home detention.

Affirmed.

KIRSCH, C.J., and RILEY, J., concur.