Randal YOUNG, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0403–CR–143.

Court of Appeals of Indiana.

May 2, 2005.

Transfer Granted July 13, 2005.

Dana Childress–Jones, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Randal Young appeals the sentence imposed by the trial court following his plea of guilty to six counts of Class B felony robbery and one count of Class C felony robbery. We affirm.

### Issues

The issues before us are:

I. whether the manner in which the trial court determined Young's sentence violated his Sixth Amendment right to trial by jury as delineated in *Blakely v. Washington;* and

II. whether his thirty-six year sentence is inappropriate.

### Facts

During August 2003, Young robbed at least seven businesses in Indianapolis. Young or an accomplice was armed with a handgun in each of the robberies. On August 27, 2003, Young was arrested and found to be in possession of an unlicensed handgun.

The State charged Young with seven counts of Class B felony robbery, one count of Class C felony robbery, two counts of Class B felony criminal confinement, one count of Class D felony pointing a firearm, and seven counts of Class A misdemeanor carrying a handgun without a license. Young pled guilty to six counts of Class B felony robbery and one count of Class C felony robbery. The plea agreement allowed for a maximum executed sentence of fifty years with open argument as to sentencing. At the sentencing hearing, the trial court stated that it was going "to impose an aggravated sentence in light of the number of crimes within the short period of time." Tr. p. 39. It then imposed sentences of twelve years on each of the Class B felony counts with four years suspended, five years on the Class C felony count with three years suspended, and ordered the sentences to be served concurrently with the exception of three of the Class B felony sentences. Thus, the total aggregate sentence was thirty-six years with twelve suspended for an executed sentence of twenty-four years. Young now appeals.

### Analysis

### I. *Blakely v. Washington*

Young contends that the trial court's sentencing procedure violated *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). *Blakely* holds that every defendant has the right under the Sixth Amendment "to insist that the prosecutor prove to a jury all facts legally essential to the punishment." *Id.* at ——, 124 S.Ct. at 2543. Thus, Young argues that he was entitled to have a jury determine beyond a reasonable doubt whether aggravating circumstances existed before the trial court could enhance the sentences above the presumptive for each of the convictions and order some of the sentences to be served consecutively.

*Blakely* followed and expanded upon *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000), which had held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely* stated "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U.S. 296, ——, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004). Because Indiana trial judges are permitted to impose only a presumptive sentence fol-

lowing a jury verdict unless they specifically "find" aggravating circumstances, it has been widely accepted by members of this court that *Blakely* invalidated sentences where a judge enhanced a sentence based on aggravating circumstances, other than criminal history, that relied upon judicial "fact-finding." *See, e.g., Berry v. State,* 819 N.E.2d 443 (Ind.Ct.App.2004), *trans. denied.*

In January, the Supreme Court issued its follow-up to *Blakely, United States v. Booker,* ——— U.S. ———, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), in which it invalidated the Federal Sentencing Guidelines as written. Some members of this court suggested that certain language in *Booker* with respect to the permissibility of discretionary sentencing schemes was sufficient to save Indiana's present scheme from unconstitutionality. *See Abney v. State,* 822 N.E.2d 260, 269–74 (Ind.Ct.App.2005) (Robb, J., concurring in result), *trans. denied; Edwards v. State,* 822 N.E.2d 1106, 1110–15 (Ind.Ct.App.2005) (Barnes, J., dissenting).

Now, however, our supreme court has issued its definitive holding that *Blakely* does indeed impact Indiana's sentencing scheme. It has held that it "cannot see any grounds for sustaining Indiana's sentencing scheme given the *Blakely* holding." *Smylie v. State,* 823 N.E.2d 679, 683 (Ind. 2005). It also held that the remedy for this situation was to adopt a system whereby Indiana's presumptive sentencing scheme remained in place, but "modified to require jury findings on facts in aggravation...." *Id.* at 685.[1] The court further clarified that *Blakely* should apply "retroactively to all cases on direct review at the time *Blakely* was announced" and that "a defendant need not have objected at trial in order to raise a *Blakely* claim on appeal...." *Id.* at 690–91.

Thus, there is no longer any question that *Blakely* applies in Indiana. It also is immaterial that Young did not raise a Sixth Amendment challenge to his sentencing procedure before the trial court. We will address Young's *Blakely* argument squarely on the merits. We focus in this particular case on another vexing question *Blakely* did not directly answer: what is a "fact" for sentencing purposes that must be found by a jury? *See, e.g.,* Jon Wool, Vera Institute of Justice—State Sentencing and Corrections, Policy and Practice Review, *Aggravated Sentencing: Blakely v. Washington—Legal Considerations for State Sentencing Systems,* pp. 4–5 (Sept. 2004) (discussing "[t]he uneasy nature of 'facts' under *Blakely*").

■ The central holding of *Blakely* is "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* ... In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Blakely,* ——— U.S. at ———, 124 S.Ct. at 2537 (emphases in original). We observe that *Blakely* does not require that a jury decide whether a certain fact or combination of facts constitutes an aggravating circumstance as a matter of law; the jury decides only whether facts exist that would support the judicial use of

---

1. Our supreme court, therefore, imposed the remedy urged by the dissenters and rejected by the majority in *Booker;* namely, it requires trial courts to impose the presumptive sentence in the absence of aggravating circumstances, which must be found by a jury, as opposed to making sentencing decisions entirely within the trial court's discretion, within a specified range of years.

an aggravating circumstance to enhance a sentence.

In *Blakely,* following the defendant's plea of guilty to kidnapping, the trial court conducted a three-day evidentiary hearing during which it received the testimony of several witnesses. On the basis of this evidence and its conclusion that it indicated "deliberate cruelty" by the defendant, the trial court enhanced the sentence for kidnapping from the standard maximum presumptive of 53 months to an exceptional 90 months. The Supreme Court held that it was improper to order the enhancement because "[t]he facts supporting that finding [of "deliberate cruelty"] were neither admitted by petitioner nor found by a jury." *Id.* at ——, 124 S.Ct. at 2537. Thus, it appears the Supreme Court was not concerned so much with the ultimate finding of "deliberate cruelty" as it was with the trial court basing that conclusion on numerous subordinate facts that were neither found by a jury nor admitted by the defendant.

*Blakely* does not require that juries ultimately determine the appropriate sentence for a defendant. *Blakely* does not appear to impact the general notion that the delineation of what may be an aggravating circumstance and what is an appropriate sentence for an offense is left to the legislative and/or judicial branches of government. As our supreme court observed, albeit before *Blakely* but in applying *Apprendi* to our death penalty statute, "[w]e believe the pivotal inquiry ... is whether exposure to punishment is increased, not whether the punishment should or should not be imposed in a given case." *Ritchie v. State,* 809 N.E.2d 258, 265 (Ind.2004). What *Blakely* and its predecessors clearly do require is that juries must decide whether

there is sufficient evidence to support the use of an aggravator and that the State cannot evade this requirement by labeling something a "sentencing factor" rather than an element of the offense. *See id.* (quoting *Ring v. Arizona,* 536 U.S. 584, 602, 122 S.Ct. 2428, 2439, 153 L.Ed.2d 556 (2002)).

We also note that the aggravating circumstances enumerated by the legislature in Indiana's general sentencing statute, Indiana Code Section 35–38–1–7.1(b), are expressly a non-exhaustive list; the statute allows the judiciary to independently develop and rely on aggravating circumstances not named in the statute when determining an appropriate sentence. Ind.Code § 35–38–1–7.1(d); *Johnson v. State,* 734 N.E.2d 242, 246 (Ind.2000). For example, it has been held in Indiana that the fact of a crime victim's pregnancy may be considered an aggravating circumstance by a trial court, although such fact is not expressly listed as an aggravating circumstance. *See McCann v. State,* 749 N.E.2d 1116, 1120 (Ind.2001). It is clear now that under *Blakely,* a jury, and not a judge, must make the initial factual determination as to whether the victim was pregnant; alternatively, the defendant may stipulate or admit to such fact or waive his or her right to a jury trial on aggravating circumstances. If the jury so finds or there is an admission or waiver, then the trial judge may consider and weigh such circumstance, or not consider it, as he or she thinks fit and in accordance with his or her discretion. The jury, however, does not decide whether the fact of pregnancy is aggravating; it only decides whether the fact of pregnancy existed after the defendant has been afforded the opportunity to argue and present evidence to the jury that it did not.[2]

---

**2.** The concern has been raised that *Blakely's* reasoning may eventually require judges to

adhere strictly to specifically enumerated aggravating circumstances as provided by stat-

In the present case, Young pled guilty to committing seven different felonies within the span of three weeks. Young specifically told the trial court, "I am pleading guilty because I am guilty, Your Honor." Tr. pp. 5–6. The trial court then recited the language of the charging information for each count, including the date of each offense, and asked Young after each count whether he admitted that what the information said was true. Young responded "yes" after each of the seven counts. Tr. pp. 10–14.

It was precisely the fact that Young committed multiple violent crimes within a short period of time that the trial court relied upon in deciding that a slight aggravation of some of his sentences was warranted. The trial court did not rely on or "find" any facts outside of those to which Young admitted when he pled guilty. What happened here is that the trial court considered the "nature and circumstances" of Young's crimes to be aggravating—or "heinous"—when viewed as a whole. That ultimate decision as to the nature of Young's crime spree was not a separate factual finding but instead was a judicial characterization of what those admitted facts said about Young's character and the appropriate punishment he deserved. We do not believe Young was entitled to have a jury decide whether the fact that he went on a crime spree warranted aggravation of his sentence; at most, he was entitled to a jury determination that he did in fact go on a crime spree, but he admitted to that fact when he pled guilty to the multiple offenses.

This case is similar in some respects to *Wrinkles v. State*, 776 N.E.2d 905 (Ind. 2002). That case addressed the applicability of *Ring* to the defendant's death penalty sentence. *Ring*, cited along with *Apprendi* in the *Blakely* decision, held that the death penalty may not be imposed on the basis of facts found by a judge rather than a jury. 536 U.S. at 609, 122 S.Ct. at 2443. In *Wrinkles*, the defendant was sentenced to death based on the sole statutory aggravating circumstance that he committed multiple murders. Our supreme court held that *Ring* was not implicated "under any view that the Court might find plausible" because, in part, the jury necessarily found the multiple murder aggravator to be satisfied when it convicted the defendant of three murders. *Wrinkles*, 776 N.E.2d at 907. The present case is different from *Wrinkles* in that the death penalty statute's list of aggravators is exhaustive, while the general sentencing statute's list is not. Under the general statute, however, the trial court was permitted to consider the fact that Young committed multiple offenses as aggravating, even if that is not expressly listed as an aggravator as it is in the death penalty statute.

Just as the court in *Wrinkles* found *Ring* not to be implicated because the jury necessarily found the aggravating circumstance to be satisfied when it convicted the defendant of multiple murders, we conclude *Blakely* is not implicated and Young's Sixth Amendment rights were not violated because the trial court enhanced his sentence based only upon facts to which he admitted when he pled guilty.[3]

---

ute and prohibit the use of judicially-created aggravating circumstances, on the basis that recognition of an aggravating circumstance after the commission of a crime would violate due process notice guarantees. *See* Wool, *Aggravated Sentencing* at p. 6. *Blakely* itself, however, did not address due process con-

cerns and we decline to read into a prohibition against any use of judicially-created aggravating circumstances.

3. The trial court also ordered some of Young's sentences to run consecutively based upon the finding of a separate aggravator, namely that

*See Wickliff v. State,* 816 N.E.2d 1165, 1167 (Ind.Ct.App.2004), *trans. denied,* (holding *Blakely* was not implicated by trial court's finding that less than an enhanced sentence would depreciate the seriousness of the offense where trial court noted its finding was based on defendant's own testimony at the sentencing hearing).

## II. Inappropriate Sentence

 Young raises a separate challenge to the appropriateness of his sentence. He requests that we revise his sentence to presumptive, concurrent terms for each conviction, or in other words a total aggregate sentence of ten years. Indiana Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Cuyler v. State,* 798 N.E.2d 243, 247 (Ind.Ct.App.2003), *trans. denied.* We exercise our responsibility to review and revise sentences with great restraint, recognizing the special expertise of the trial bench in making sentencing decisions. *Foster v. State,* 795 N.E.2d 1078, 1092 (Ind.Ct.App.2003), *trans. denied.*

We begin by noting that Young agreed to plead guilty to several crimes and agreed to a maximum executed sentence of fifty years. He received a total sentence of thirty-six years and an executed sentence of twenty-four years, well below the plea agreement's limit. There is a difference of opinion on this court as to whether a defendant who enters into a plea agreement with a sentencing cap may later challenge the appropriateness of a sentence that does not exceed the cap. *Compare Gist v. State,* 804 N.E.2d 1204, 1206–07

(Ind.Ct.App.2004) (holding that defendant could not challenge appropriateness of sentence on appeal when he received sentence permitted by plea agreement) *with Wilkie v. State,* 813 N.E.2d 794, 803 (Ind.Ct.App. 2004), *trans. denied,* (disagreeing with *Gist* ). At the very minimum, we believe that the fact Young received a sentence significantly less than the maximum possible under the plea agreement he signed is a relevant consideration when determining the sentence's appropriateness.

Here, the nature of each offense Young committed, in isolation, may not have exceeded the "typical" robbery in its seriousness. However, we agree with the trial court that the sheer number of crimes Young committed within a short period of time warrants considerably more than presumptive, concurrent sentences for each offense. Young pled guilty to six counts of armed robbery and one other count of robbery. It is entirely appropriate that his sentence reflect the fact that he committed multiple robberies, while presumptive, concurrent sentences for each offense would only effectively punish Young for committing one robbery.

As for Young's character, he points to positive traits, such as his decision to plead guilty and expressions of remorse, his honorable military discharge, his progress at the time of sentencing in a drug treatment program, and the existence of a supportive family structure. Young does have a prior criminal history, though it is relatively minor and consists of five misdemeanor convictions over the span of fourteen years. In contrast, both the trial court and the State have pointed out that Young committed these crimes because of a crack habit that he failed to seek treatment for, de-

he claimed to have an available support network to deal with his substance abuse problems, but declined to take advantage of it and instead went on a crime spree. Our supreme

court in *Smylie* expressly held that *Blakely* does not impact consecutive sentencing decisions in Indiana. *Smylie,* 823 N.E.2d at 686.

spite his supportive family, and that he had failed in an earlier drug treatment attempt before committing these robberies.

In sum, we readily agree that these offenses and Young's character are far from the worst that we have seen. On the other hand, Young's sentence does not nearly approach the maximum sentence he could have received. For six B felonies and one C felony, Young could have received an aggregate sentence of one hundred twenty-eight years if he received maximum, consecutive sentences for each offense; the minimum he could have received with minimum, concurrent sentences was six years. Young's actual sentence of thirty-six years, with twenty-four executed, falls on the scale much closer to the minimum possible sentence than to the maximum. The sentence also falls in the mid-range of sentences he could have received pursuant to the plea agreement he signed. All in all, especially given the sheer number of serious and dangerous crimes within a brief period of time, we cannot say that Young's slightly aggravated sentence is inappropriate.

## Conclusion

Young's enhanced sentence does not violate *Blakely v. Washington*. Furthermore, his sentence is appropriate. We affirm.

Affirmed.

MAY, J., and DARDEN, J., concur.