**Mike SIMON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–8886.**

Court of Appeals of Alaska.

Oct. 7, 2005.

---

Holly Handler, Assistant Public Defender, Bethel, and Barbara K. Brink, Public Defender, Anchorage, for the Appellant.

Lance Joanis, Assistant District Attorney, Bethel, and Gregg D. Renkes, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

Mike Simon sneaked into a woman's house at night and touched her genitals. For this conduct, Simon was charged with two class B felonies: first-degree burglary and second-degree sexual assault. The case was ultimately settled by a plea agreement. Under the terms of this agreement, the State dismissed the burglary charge and Simon agreed to plead no contest to a reduced charge of third-degree sexual assault.

Third-degree sexual assault is a class C felony.[1] Simon had four prior felony convictions (two felony assaults, a burglary, and a felony escape). Because of this, Simon was a "third felony offender" for purposes of Alaska's presumptive sentencing laws,[2] and he therefore faced a 3–year presumptive term for his current offense.[3]

---

1. AS 11.41.425(b).

2. AS 12.55.185(15).

3. Former AS 12.55.125(e)(2) (prior to its amendment in 2005).

As part of his plea bargain with the State, Simon stipulated to three aggravating factors under AS 12.55.155(c): (c)(7)—that one of his prior felonies was of a more serious class than his current class C felony; (c)(8)—that his criminal history included aggravated or repeated instances of assaultive behavior; and (c)(10)—that the conduct involved in his current offense was among the worst within the definition of the offense (since Simon was factually guilty of a more serious crime).[4]

Because Simon stipulated to these aggravating factors, the superior court was authorized to sentence Simon to any term of imprisonment between the 3–year presumptive term and the 5–year maximum term for a class C felony.[5]

At Simon's sentencing hearing on August 8, 2004, Superior Court Judge Dale O. Curda found that Simon was a "worst offender" as that term has been defined in Alaska sentencing decisions.[6] Under those same appellate decisions, this "worst offender" finding authorized Judge Curda to sentence Simon to the maximum sentence, 5 years' imprisonment. Judge Curda imposed this sentence.

Simon now challenges his sentence on two grounds.

First, Simon contends that the superior court violated his constitutional rights when the superior court found him to be a "worst offender" for sentencing purposes without submitting this issue to a jury. Simon argues that the superior court's action violated his right to jury trial under the Sixth Amendment to the United States Constitution, as construed in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

Second, Simon argues that even if his right to jury trial was not violated, Judge Curda was clearly mistaken when he concluded that Simon should receive the maximum sentence of 5 years' imprisonment.

*The facts of Simon's sentencing*

The basic terms of Simon's plea agreement with the State are contained in the following notice that the parties filed with the court:

## NOTICE TO COURT OF CRIMINAL RULE 11 AGREEMENT

COMES [*sic*] NOW the parties and gives [*sic*] notice to the court of the following Rule 11 Agreement ...

Defendant pleads [to] Sexual Assault in the Third Degree (reduced from Sexual Assault II). State dismisses other charge(s).

*Sentence:* Not contest Agg[ravator]s 7, 8, & 10. [Sentencing] open with a range of 3–5 [years] to serve.

Simon's sentencing took place on August 8, 2004, some six weeks after the United States Supreme Court issued *Blakely v. Washington,* and the parties were aware of the *Blakely* decision. At the sentencing hearing, Simon's attorney told Judge Curda that Simon's plea agreement with the State—in particular, Simon's concession of aggravating factors (c)(7), (c)(8), and (c)(10)—had been negotiated with full knowledge of Simon's potential right to a jury trial under *Blakely,* and that the plea agreement called for Simon to waive any potential right to a jury trial on these three aggravators.

However, just before Simon's sentencing, the State gave notice that it intended to propose one additional aggravating factor: (c)(15)—that, even though Simon was a "third felony offender" for presumptive sentencing purposes, he in fact had more than two prior felony convictions.

Simon's attorney told Judge Curda that "Aggravator 15 came as a surprise [to the defense].... There's no [plea] agreement about that." She then told the judge that she had spoken to other attorneys in her office (the Public Defender Agency) about a

**4.** See *Benboe v. State,* 698 P.2d 1230, 1232 (Alaska App.1985).

**5.** Former AS 12.55.125(e) and former AS 12.55.155(a)(1) (both prior to their amendment in 2005).

**6.** See *Hintz v. State,* 627 P.2d 207, 210 (Alaska 1981); *State v. Wortham,* 537 P.2d 1117, 1120 (Alaska 1975); *Collins v. State,* 778 P.2d 1171, 1175 (Alaska App.1989).

possible *Blakely* objection to aggravator (c)(15):

> *Defense Attorney:* [Mr. Simon and I] talked about *Blakely,* and we talked with other people in the office about [a defendant's right to jury trial on the issue of] prior convictions.... And, you know, there's some debate about whether *Blakely* applies to prior convictions.... *Apprendi [v. New Jersey ]* says [that the right to jury trial] doesn't cover prior convictions, but *Blakely* didn't specifically say whether it was [incorporating that same exception].

> *The Court:* Right, and [aggravator (c)(7), dealing with] the prior felony being more ... serious.... I know that Mr. Hamilton [another assistant public defender] has a response to that one, too.

> *Defense Attorney:* Right.

> *The Court:* He disagrees with that. But in any case, ... the main one here [that] I'm concerned about is [aggravator (c)(10)—most serious conduct], because that [one], I think, clearly would be covered by *Blakely.*

> *Defense Attorney:* Right.

> *The Court:* ... But [Simon has] agreed to that [one] as part of the [plea] agreement here?

> *Defense Attorney:* Right.

Following this exchange, the defense attorney said nothing further of substance regarding any of the four proposed aggravators. In other words, even though the defense attorney discussed the fact that it might be possible to raise a *Blakely* objection to aggravator (c)(15), she never actually made such an objection.

A few moments later, Judge Curda found that all four aggravators were proved: (c)(7)—that one of Simon's prior felonies was of a more serious class than his current class C felony; (c)(8)—that Simon's criminal history included aggravated or repeated instances of assaultive behavior; (c)(10)—that the conduct underlying Simon's current offense was among the worst within the definition of the offense; and (c)(15)—that Simon had more than two prior felony convictions.

Later, toward the end of the sentencing hearing, Judge Curda found that Simon was a "worst offender":

> *The Court:* Although [Simon] doesn't have any sexual assault-type charges on his [prior] record, he does have an extensive prior record that ... involve[s] four prior felonies, including two felony assaults and [an] escape and a ... burglary, in addition to other ... misdemeanor assault convictions.

> In [determining] if Mr. Simon is a worst offender, ... the court looks at ... the combination of the offense and ... the offender himself, and the court can make a finding of ... "worst offender" on [either or both] of those bases.

> [Simon's current] offense itself wouldn't [qualify] as a worst offense, although I do agree ... that this is a particularly bad offense, given the circumstances here, [given] the fact that Mr. Simon ... could have been [additionally] convicted [of] burglary in the first degree for breaking in[to] the [victim's] house and committing the sexual assault.

> I do find that [Simon] is a worst offender, based on the offense and [on] his background.... Mr. Simon [has been] involved in criminal activity since 1978 [*i.e.,* for twenty-six years]. He [is now] 46 [years old].... He does have past failures, both on probation and parole.... [T]he court also notes that the prior conviction ... was [of a] more serious [class than Simon's current offense], and ... he's got [more than two] other felony convictions, and the prior assaults in his background. In addition, I'm agreeing that this is among the worst [conduct within the] definition of the crime of sexual assault in the third degree.

> So, for those reasons, my main goal here is to isolate Mr. Simon.... [T]he best predictor of future behavior is past behavior, and ... his past behavior has been horrendous.... [M]y main goal here is to isolate Mr. Simon to protect the community. I am going to ... give him a flat-time sentence of 5 years, find[ing] him a worst offender based on the reasons that I've articulated....

*Simon's argument that, under Blakely, he was entitled to a jury trial on the question of whether he should be classified as a "worst offender" (as that term has been defined in Alaska sentencing decisions)*

In this appeal, Simon argues that Judge Curda violated his right to jury trial under the Sixth Amendment when Judge Curda found (in the absence of a jury verdict on this issue) that Simon was a "worst offender" for sentencing purposes. However, even though she was aware of *Blakely*, Simon's attorney raised no objection of any kind to the judge's finding that Simon was a worst offender. Specifically, Simon's attorney voiced no *Blakely* objection when Judge Curda reviewed Simon's record and concluded, based on that record, that Simon was a worst offender. Thus, if Simon is to prevail in this appeal, he must show that the challenged sentencing procedure constituted plain error.

We conclude that Simon has failed to show plain error for two discrete reasons.

First, to prove plain error, Simon must show that his attorney had no tactical reason for failing to object.[7] Here, the record suggests that Simon's attorney had a good reason for failing to raise a *Blakely* objection.

Simon's attorney had negotiated a plea bargain in which Simon expressly agreed that the superior court could sentence him to any term of imprisonment between the applicable presumptive term, 3 years, and the maximum term allowed by law for his offense, 5 years. But under the pertinent Alaska sentencing decisions, Judge Curda was obliged to find that Simon was a "worst offender" before the judge was authorized to impose this maximum sentence of 5 years' imprisonment.[8] One could therefore argue that, as part of the plea bargain, the parties implicitly agreed that Judge Curda was authorized to consider, and to rule on, the question of whether Simon was a worst offender.

Because of this, Simon's attorney might reasonably foresee that if she raised a *Blakely* objection to Judge Curda's ruling on the "worst offender" question, there was a significant chance that the State would seek rescission of the plea agreement. Thus, the defense attorney had a tactical reason for refraining from raising this objection—and, for this reason, Simon has failed to show plain error.

Second, turning to the potential merits of a *Blakely* objection, we again conclude that Simon has failed to show plain error. As we explained above, Simon conceded three aggravating factors and failed to object to a fourth aggravating factor. Under Alaska's presumptive sentencing statutes as they existed before the legislature amended them in the spring of 2005,[9] the existence of any of these aggravating factors authorized the superior court to impose a sentence of imprisonment up to the 5–year maximum term for Simon's offense.[10]

It is true that, under the sentencing decisions of the Alaska Supreme Court, Judge Curda was obliged to find that Simon was a "worst offender" before he imposed this 5–year maximum sentence. But this was not a limitation imposed by the presumptive sentencing statutes. Rather, it was an aspect of Alaska sentencing law that pre-dated presumptive sentencing—a rule imposed by the supreme court to regulate trial judges' exercise of their sentencing discretion within the range of sentences authorized by statute.

Decisions from other states suggest that sentencing classifications such as "worst offender" are not the type of factual issue covered by the *Blakely* right to jury trial, but are instead a traditional component of sentencing—a legal assessment of the significance of the proved facts of the defendant's conduct and background for purposes of exercising sentencing discretion.

---

7. *See Jackson v. American Equity Ins. Co.,* 90 P.3d 136, 144 (Alaska 2004); *Henry v. State,* 861 P.2d 582, 589 (Alaska App.1993); *Massey v. State,* 771 P.2d 448, 453 (Alaska App.1989); *Potts v. State,* 712 P.2d 385, 394 n. 11 (Alaska App.1985).

8. *See supra,* note 6.

9. *See* SLA 2005, ch. 2 (effective March 23, 2005).

10. Former AS 12.55.155(a)(1) (version before the 2005 amendment).

See, for example, *State v. Hughes*, 154 Wash.2d 118, 110 P.3d 192 (2005), where the Washington Supreme Court held that, once the operative facts of the case are established by verdict or concession, "*Blakely* left intact the trial judge's authority to determine whether [the] facts alleged and found are sufficiently substantial and compelling to warrant imposing an exceptional sentence".[11] The Washington court declared that such a decision was "a legal judgment which, unlike factual determinations, can still be made by the trial court." [12]

*Accord, Young v. State*, 826 N.E.2d 665, 668 (Ind.App.2005) ("[U]nder *Blakely*, a jury, and not a judge, must make the initial factual determination as to whether the victim was pregnant; alternatively, the defendant may ... admit [this] fact or waive his or her right to a jury trial on [this fact]. [But] then the [sentencing] judge may consider and weigh [this] circumstance, or not consider it, as he or she thinks fit and in accordance with his or her discretion. The jury ... does not decide whether the fact of [the victim's] pregnancy is aggravating; it only decides whether the fact of pregnancy [is proved].")

*See also Michael v. State*, 115 P.3d 517, 519 (Alaska 2005) (suggesting that, under a given set of facts, an appellate court should exercise *de novo* review of a sentencing judge's rulings on aggravating and mitigating factors).

Alternatively, some states have held that, once one or more aggravating factors are proved in conformity with *Blakely* (thus establishing the sentencing judge's authority to impose a sentence within a higher range), *Blakely* is satisfied and any further fact-finding can be done by the sentencing judge. *See State v. Carreon*, 211 Ariz. 32, 116 P.3d 1192, 1193 (2005); *State v. Martinez*, 210 Ariz. 578, 115 P.3d 618, 625–26 (2005); *People v. Black*, 35 Cal.4th 1238, 29 Cal.Rptr.3d 740, 749–750, 113 P.3d 534, 542–43 (2005); *Lopez v. People*, 113 P.3d 713, 731 (Colo.

2005); *State v. Gomez*, 163 S.W.3d 632, 658–59 (lead opinion) & 665 (Anderson, J., concurring in part and dissenting in part) (Tenn. 2005). *But see State v. Natale*, 184 N.J. 458, 878 A.2d 724, 738–39 (2005) (rejecting this interpretation of *Blakely* ).

■ We need not definitively decide these legal questions. As we explained above, Simon did not raise this jury trial issue in the superior court, and so the precise question before us is whether Judge Curda committed plain error when he made the "worst offender" finding without submitting this issue to a jury.

We have just discussed several court decisions indicating that a "worst offender" finding is not covered by *Blakely*—or (alternatively) that it is not covered by *Blakely* if other aggravating factors have already been proved in conformity with *Blakely*. In support of his jury trial argument, Simon simply cites *Blakely* and the case that preceded it, *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). He does not discuss or even mention any of the cases we have described here, nor any other cases applying *Apprendi* or *Blakely* to the legal issue presented in this case.

■ To be "plain error", an error must be so obvious that any competent judge or attorney would have recognized it.[13] If a claim of error is reasonably debatable—if reasonable judges could differ on what the law requires—then a claim of plain error fails.[14] Given the existing cases in this area of law, reasonable judges could certainly differ as to whether Simon was entitled to a jury trial on the question of whether he was a "worst offender". Simon has failed to show plain error.

For these reasons, we affirm Judge Curda's finding that Simon was a worst offender for sentencing purposes. Accordingly, Judge Curda could impose the statutory maximum sentence of 5 years' imprisonment.

11. *Hughes*, 110 P.3d at 202.

12. *Id.*, relying on *Blakely*, 124 S.Ct. at 2538 n. 8.

13. *Massey v. State*, 771 P.2d 448, 453 (Alaska App.1989); *Carman v. State*, 658 P.2d 131, 137

(Alaska App.1983); *Marrone v. State*, 653 P.2d 672, 675–76 (Alaska App.1982).

14. *Heaps v. State*, 30 P.3d 109, 116 (Alaska App. 2001); *Marrone v. State*, 653 P.2d 672, 676 (Alaska App.1982).

*Simon's argument that his sentence of 5 years' imprisonment is too severe*

Simon argues in the alternative that, even if there was no *Blakely* violation, his sentence of 5 years to serve is mistakenly severe. Before we address that contention, we must first address the State's argument that Simon is barred from challenging the severity of his sentence.

As we noted earlier, Simon and the State filed a "Notice to [the] Court" that explained their plea agreement. One paragraph of this notice described the agreement with respect to Simon's sentence:

> *Sentence:* Not contest Agg[ravator]s 7, 8, & 10. [Sentencing] open with a range of 3–5 [years] to serve.

Thus, the plea agreement document expressly stated that the sentencing range in Simon's case was going to be 3 to 5 years to serve.

Under AS 12.55.120(a), a defendant has no right to appeal a sentence if "the sentence was imposed in accordance with a plea agreement ... that ... provided for imposition of ... a sentence equal to or less than a specified maximum sentence." Relying on this statute, the State argues that Simon has no right to appeal the severity of his sentence— because, according to the State, Simon expressly agreed to a sentence "equal to or less than" the 5–year statutory maximum for his offense.

The State's argument raises an issue concerning the proper interpretation of the plea agreement—the contract between Simon and the State. The quoted language could be viewed as merely an acknowledgement that, given Simon's intention to plead guilty to a class C felony, his status as a third felony offender, and his intention to concede aggravating factors, the applicable sentencing range would (by law) be 3 to 5 years' imprisonment. Conversely, the quoted language could conceivably be viewed in the manner suggested by the State—*i.e.*, viewed as Simon's express acquiescence in a sentence of 3 to 5 years, and his implicit promise not to contest whatever sentence the superior court imposed, so long as that sentence did not exceed the statutorily prescribed maximum penalty for Simon's offense (5 years' imprisonment).

■ When a provision of a contract is ambiguous and reasonably susceptible of two differing interpretations, a court will normally seek testimony concerning the parties' understanding of the provision at the time the contract was made, and will examine both case law interpreting similar language and relevant extrinsic evidence concerning the interpretation of the disputed language within the relevant community of contracting parties.[15] In this case, however, we conclude as a matter of public policy that we must reject the State's suggested interpretation of the plea agreement.

■ The Indiana Court of Appeals confronted a similar case in *Wilkie v. State*, 813 N.E.2d 794 (Ind.App.2004). The defendant in *Wilkie* signed a plea agreement in which he acknowledged his understanding of the range of sentences that the sentencing judge might, by law, impose. The government argued that Wilkie's act of signing this document should be interpreted as (1) Wilkie's concession that any sentence up to the maximum term would be appropriate and (2) Wilkie's waiver of his right to appeal, even if a maximum sentence was imposed.[16] The Indiana court refused to interpret the document that way:

> [I]f a defendant signs a plea agreement in which he agrees to a specific term of years, or to a sentencing range other than the range authorized by statute, he will not be able to claim thereafter that a sentence imposed consistent with the agreement is inappropriate.... But we reject the idea that a defendant can "agree" to be sentenced in accordance with the statutory range applicable to his offense and, as a result of that agreement, be barred from [challenging] the trial court's decision to impose the maximum sentence....

*Wilkie*, 813 N.E.2d at 804.

We agree that this is the proper rule to follow. We would view the matter different-

---

**15.** *Norville v. Carr–Gottstein Foods Co.*, 84 P.3d 996, 1004 (Alaska 2004), quoting *Anchorage v. Gentile*, 922 P.2d 248, 256 (Alaska 1996).

**16.** *Wilkie*, 813 N.E.2d at 803.

ly if the record showed that Simon and the State had bargained for a sentencing range narrower than the range that would otherwise apply to Simon's case, or if Simon had expressly waived his right to appeal his sentence. But here, as in *Wilkie*, the only thing that lends any credence to the State's argument is the fact that the plea agreement contains language describing the sentencing range anticipated by the parties. This sentencing range was simply the legal consequence of Simon's decision to plead guilty to third-degree sexual assault (given the fact that Simon was a third felony offender, and given the fact that he was conceding aggravating factors).

In other words, the record in Simon's case gives no indication that the disputed clause of the plea agreement constituted anything more than an acknowledgement of the sentencing range provided by law for any defendant in Simon's situation. In these circumstances, we hold that this language must not be interpreted as a waiver of Simon's appeal rights.

We therefore turn to the merits of Simon's contention that a sentence of 5 years to serve is inappropriately severe.

As explained above, when Judge Curda selected this 5–year sentence, he focused primarily on Simon's long history of criminal offenses (four felonies, plus assaultive misdemeanors), Simon's violations of probation and parole, the particularly bad nature of the offense, and the fact that Simon was no longer a youthful offender. Noting that Simon's past conduct was probably the best predictor of his future conduct, Judge Curda concluded that the primary sentencing goal in Simon's case should be isolating Simon to protect the community from future crimes.

On appeal, Simon argues that the record does not prove that he is beyond all rehabilitative efforts, and he contends that Judge Curda failed to adequately address the sentencing goal of rehabilitation. But given Simon's record, and given Simon's conduct in the current case (conduct that actually comprised two class B felonies: second-degree

sexual assault and first-degree burglary), Judge Curda could reasonably conclude that hopes for Simon's rehabilitation had to be subordinated to the immediate need to protect the public from Simon's repeated criminal behavior.

The question is whether Judge Curda's sentencing decision is clearly mistaken.[17] Having independently reviewed the record in Simon's case, we do not find that the judge's decision is clearly mistaken. Accordingly, we uphold Simon's sentence of 5 years to serve.

*Conclusion*

The judgement of the superior court is AFFIRMED.

---

17. *See McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974) (an appellate court is to uphold a sentencing decision unless the sentence is clearly mistaken).