**Sergio O. COLGAN, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–4351.

Court of Appeals of Alaska.

Oct. 9, 1992.

James M. Hackett, James M. Hackett, Inc., Fairbanks, for appellant.

Harry L. Davis, Dist. Atty., Fairbanks, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS and MANNHEIMER, JJ.

## OPINION

COATS, Judge.

Sergio Colgan was convicted, based upon his plea of guilty, of murder in the first degree, an unclassified felony with a maximum term of imprisonment of ninety-nine years. AS 11.41.100. Superior Court Judge Richard D. Savell sentenced Colgan to the maximum sentence of ninety-nine years of imprisonment. In addition, Judge Savell ordered that Colgan would be ineligible for parole. AS 12.55.115. Colgan appeals, arguing that the sentence is excessive. We affirm.

Colgan and his friend, Eric Hughes, had for some time planned to select a young female victim to kidnap, rape, and murder. On October 13, 1990, Hughes and Colgan packed two pistols and some duct tape in a briefcase and went hunting for a victim. They parked at the Bentley Mall in Fairbanks for a few minutes before noticing C.Z., a sixteen-year-old woman who had gone to school with Hughes and Colgan. Hughes and Colgan devised a plan to get C.Z. to an isolated area. Hughes approached C.Z., telling her that he needed a ride to work because Colgan was going to give him a ride but Colgan's car had broken down. C.Z. agreed to give Hughes a ride. Hughes directed C.Z. to a remote area outside of Fairbanks. Colgan followed at a distance with his car. At the remote area, Hughes and Colgan taped C.Z.'s mouth and hands. According to Colgan, at this point Hughes told Colgan that he "couldn't handle it anymore." Hughes got in Colgan's car. Colgan then struck C.Z. in the back of the head with a handgun, knocking her unconscious. They placed her in the back of Colgan's car. Colgan then drove to a remote spot on the Richardson Highway. As Colgan drove to this location Hughes got in the back seat of the car and ripped off C.Z.'s clothes. When they arrived at their destination Hughes and Colgan took turns raping C.Z. After they finished raping C.Z., they taped her feet together, taped her hands behind her back, and placed tape over her hands and eyes. As they drove from the scene of the rape, Colgan and Hughes discussed how to carry out the final part of the plan: killing C.Z. They decided that the easiest way to carry out C.Z.'s murder was to suffocate

her by placing duct tape over her mouth and nose. Hughes placed duct tape around C.Z.'s nose and face. However, according to Colgan, the tape did not kill C.Z. Hughes completed the murder of C.Z. by pressing a tire iron against her throat, suffocating her. Hughes and Colgan then placed the nude body of C.Z. in the trunk of their car. They buried C.Z. and her clothes in a remote area off Chena Hot Springs Road.

Shortly after committing this crime, Hughes joined the Marine Corps and left the State of Alaska. Colgan stayed in Fairbanks where he worked at the Jack Randolph Insurance Agency. In January of 1991, Colgan entered counseling with a psychologist. During this counseling, despite being warned by the psychologist that the psychologist was required to report child sexual abuse which he learned of during counseling, Colgan told the psychologist that he and a friend had raped and murdered a sixteen-year-old girl. The psychologist talked to an attorney about his duty to disclose this information and concluded the law required him to report it. The psychologist told this to Colgan and arranged for Colgan to talk with an attorney. At this point Colgan told the psychologist that he had made up the story about the murder because he wanted attention. The psychologist told Colgan and his counsel that he had to report the incident, and called the State Division of Family Services. The police contacted the psychologist, who told the police about Colgan's statement.

Colgan attempted to reach Eric Hughes to warn him that he might be contacted by the police. However, Hughes was in basic training in California and Colgan was unable to contact him. Meanwhile, Sergeant Jim McCann of the Alaska State Troopers found out that Eric Hughes and Sergio Colgan were close friends. Sergeant McCann traveled to California to meet with Hughes. Hughes confessed to McCann and returned to Fairbanks with him. McCann set up a meeting between Hughes and Colgan. The troopers listened in on the conversation with a recording device. During the meeting Hughes persuaded Col-

gan to allow him to call Sergeant McCann. When McCann interviewed Hughes and Colgan, Colgan confessed to the crime.

The state initially charged Colgan and Hughes with kidnapping, murder in the first degree, and sexual assault in the first degree. Hughes entered a plea of guilty to murder in the first degree with the understanding that he would testify against Colgan. Colgan's case went to trial. During jury selection, Colgan entered a plea of guilty to a charge of murder in the first degree with the understanding that the state would dismiss the other charges.

In arguing that his sentence is excessive, Colgan points out that at the time of the offense he was nineteen years old and had no prior criminal record. He suggests that he reported the offense to the psychologist in spite of being warned of the lack of confidentiality. He contends that the record shows that he is extremely remorseful, that he has a good employment history, and that he has good prospects for rehabilitation.

In sentencing Colgan, Judge Savell recognized that Colgan was a young offender with no prior record. However, Judge Savell started out his analysis pointing out the extreme facts of the offense. Judge Savell found that Colgan had planned the crime for a long period of time and that Colgan had possibly planned the murder for months or even years. Colgan had chosen C.Z. for abduction, rape and murder simply for the pleasure of committing the crime. Judge Savell pointed out that Colgan had been in close contact with C.Z. for several hours, had many opportunities to withdraw from his plan without taking her life, but had calmly, dispassionately, and brutally carried out the murder. Judge Savell examined Colgan's claim of remorse. He found that Colgan had only feigned remorse when he discovered that his absence of remorse would be used against him at sentencing. He examined Colgan's history of psychological treatment. Judge Savell noted that Colgan had first undergone treatment when, at the age of twelve, Colgan had attempted to kill himself with a firearm. Judge Savell concluded that in

spite of the treatment which Colgan had received it was obvious that the treatment had failed. Judge Savell concluded that Colgan's crime was a worst offense and that Colgan was a worst offender. He found that the record showed that Colgan was an extremely dangerous person and that there was every reason to believe that Colgan would continue to be a dangerous person. He expressed concern that if Colgan were ever released from jail, he would again attempt to commit a perfect murder for the thrill of it. Judge Savell concluded that in order to protect the public it was necessary for him to sentence Colgan to ninety-nine years of imprisonment and to order that he could not be released on parole.

■ Colgan first contends that his sentence of ninety-nine years of imprisonment is excessive. In *Riley v. State,* 720 P.2d 951, 952 (Alaska App.1986) we pointed out that, "Alaska cases have consistently approved the imposition of maximum sentences for [murder in the first degree]. Indeed, we are aware of no decision of this court or of the Alaska Supreme Court holding a maximum sentence for first degree to be excessive." (Footnote omitted.) *See also Ridgely v. State,* 739 P.2d 1299, 1303 (Alaska App.1987) (finding not clearly mistaken sentences of ninety-nine years of imprisonment for murder in the first degree for two defendants, age nineteen and age sixteen at the time of their offense). Given the extremely aggravated nature of Colgan's offense we do not find that the sentence of ninety-nine years of imprisonment was clearly mistaken.

■ Colgan next contends that Judge Savell erred in restricting his eligibility for parole. In *Stern v. State,* 827 P.2d 442, 450 (Alaska App.1992) we stated:

When a sentencing judge restricts parole eligibility, the judge must specifically address the issue of parole restriction, setting forth with particularity his or her reasons for concluding that the parole eligibility prescribed by AS 33.16.090 and AS 33.16.100(c)–(d) is insufficient to protect the public and insure the defendant's reformation. When the defendant's sentence is lengthy, as in Stern's case, Alaska law presumes that questions of discretionary release are better left to the Parole Board, since the Board evaluates the advisability of parole release in light of the defendant's tested response to Department of Corrections rehabilitative measures. However, because the Alaska legislature has affirmatively given sentencing judges the power to restrict or deny parole eligibility, this presumption (that parole release of long-term prisoners should normally be evaluated after the defendant has established an institutional history) must remain rebuttable.

*See also Lawrence v. State,* 764 P.2d 318, 321 (Alaska App.1988). Judge Savell's findings comply with the requirements of *Stern.* The Alaska Supreme Court and this court have previously found not clearly mistaken sentences which required the defendant to spend the rest of his life in prison without any possibility of parole. *See Nukapigak v. State,* 663 P.2d 943, 946 (Alaska 1983); *Alexander v. State,* 838 P.2d 269 (Alaska App.1992); *Washington v. State,* 828 P.2d 172, 175 (Alaska App. 1992); *Stern v. State,* 827 P.2d 442, 450 (Alaska App.1992); *Weitz v. State,* 794 P.2d 952, 958 (Alaska App.1990); *Hastings v. State,* 736 P.2d 1157, 1160 (Alaska App. 1987); *Krukoff v. State,* 702 P.2d 664, 666 (Alaska App.1985).

Colgan points out that the offenders in these cases were not youthful offenders with no prior record who committed a single offense. However, we conclude that Judge Savell's findings are supported by the record and support the parole restriction. The facts of this case are particularly chilling. Colgan was a troubled young man who shot himself in the stomach with a twenty-two caliber rifle in 1985. Colgan originally claimed that the shooting was an accident, but in 1987 the defendant confided in his mother that this was an attempt to get attention by attempting suicide. Colgan told his mother in March of 1987 that he was again feeling suicidal. Colgan entered treatment at Charter North for approximately two months. It was during this time that he confided to his roommate at Charter North his interest in committing

a murder without getting caught. Several times Colgan talked to his roommate about murdering a female victim. In 1990, Colgan discussed this obsession with his friend, Eric Hughes. They planned to commit the crime for several days and looked for victims. They mercilessly carried out their plan. Based upon his observations of the defendants, Judge Savell concluded that they had no remorse for their crimes. He found that the remorse which they expressed was simply an attempt to obtain a more lenient sentence.

■ Colgan exercised his fifth amendment right to refuse to undergo a psychiatric examination. As Colgan points out, Judge Savell could not aggravate Colgan's sentence because he exercised his fifth amendment rights. *Spencer v. State*, 642 P.2d 1371, 1377 n. 5 (Alaska App.1982). However, Judge Savell could certainly sentence Colgan based upon the information he had before him in the record. This is what the record reflects that Judge Savell did. During the sentencing hearing, the state presented testimony from Dr. David Sperbeck, who is a forensic and clinical psychologist. Dr. Sperbeck had examined Eric Hughes but did not examine Colgan. However, Dr. Sperbeck made some general observations concerning the nature of the crime. Dr. Sperbeck testified that he had conducted psychological examinations of approximately one hundred and twenty to one hundred and fifty people who had committed murders. In describing the murder in this case Dr. Sperbeck stated that, "The acts are among the most serious that I have ever seen." He stated that he would predict "very little rehabilitative potential in a person who methodically plans and meticulously carries out a ... complicated series of acts which resulted in the ... murder of a victim, as ... in this case."[1] Dr. Sperbeck's conclusions give support to Judge Savell's findings. We conclude that Judge Savell did not err in imposing the maximum sentence of ninety-nine years of

imprisonment and in restricting Colgan's parole for that entire term.

The sentence is AFFIRMED.

---

1. We note that the author of the presentence report also recommended that Colgan be sentenced "for the maximum allowable period of incarceration" and that "the court should order discretionary parole restricted to the fullest extent allowed by law."