Fred A. BAKER, Appellant,

v.

STATE of Alaska, Appellee.

No. A–9480.

Court of Appeals of Alaska.

May 2, 2008.

---

Fred A. Baker, pro se.

Seward, Dan Lowery, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

COATS, Chief Judge.

A jury convicted Fred A. Baker of felony driving while intoxicated, felony refusal to submit to a breath test, driving with a revoked license, and third-degree criminal mischief.[1] Baker was arrested for these offenses after an officer observed him driving erratically, speeding through a parking lot, and driving on the sidewalk. He was on bail release for another driving while intoxicated offense at the time. Superior Court Judge Pro Tem Gregory J. Motyka found that Baker's offenses were aggravated and sentenced him to a composite term of 11½ years of imprisonment.

Baker appealed, and we affirmed his convictions but vacated his sentence. We ruled that Judge Motyka had erred in finding the aggravating factor that Baker had previously been convicted of a more serious felony.[2] We also ruled that Judge Motyka had erred in concluding that he was required by law to impose a minimum sentence of 6 years to serve.[3] We therefore remanded the case to the superior court for resentencing.[4]

On remand, Judge Motyka reimposed the 11½ years of imprisonment. Baker appeals, contending that Judge Motyka committed several errors at resentencing, including imposing an excessive sentence. For the rea-

sons explained below, we affirm Judge Motyka's sentencing decisions.

■ Baker first contends that Judge Motyka erred at resentencing by not allowing him to challenge a prior California felony conviction. That conviction formed part of the factual basis for the superior court's finding of aggravating factor AS 12.55.155(c)(15)—that Baker had previously been convicted of three or more felonies. Baker conceded this aggravating factor at his original sentencing.[5] But at resentencing, he argued that he was entitled to relitigate this issue "as if the earlier sentencing proceeding had not taken place."[6]

Judge Motyka ruled that our remand was limited to reconsideration of Baker's sentence, and that Baker was not entitled to challenge his California conviction. We agree with Judge Motyka that our remand was for the purpose of allowing Judge Motyka to reconsider Baker's sentence, and that Baker was not entitled to relitigate other issues. We therefore conclude that Judge Motyka did not abuse his discretion by refusing to reconsider his finding that Baker had been convicted of three or more felonies.

Judge Motyka did allow Baker to contest the aggravating factors on the ground that he was entitled under the United States Supreme Court's decision in *Blakely v. Washington*[7] to have a jury find those aggravating factors. *Blakely* was decided after Baker's original sentencing. Baker now challenges Judge Motyka's *Blakely* rulings.

■ Baker argues that, under *Blakely*, a jury was required to find the AS 12.55.155(c)(15) aggravating factor that he had previously been convicted of three or more felonies. But we have previously held that this aggravating factor is *Blakely*-compliant when it is based on a defendant's

---

1. *Baker v. State,* 110 P.3d 996, 997 (Alaska App. 2005) (citing AS 28.35.030(a)(1), (n); AS 28.35.032(a), (p); AS 28.15.291(a); and AS 11.46.484(a)(1), respectively).

2. *Id.* at 1004; AS 12.55.155(c)(7).

3. *Baker,* 110 P.3d at 1004.

4. *Id.*

5. *Id.* at 1001.

6. *Tookak v. State,* 680 P.2d 509, 511 (Alaska App.1984).

7. 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

undisputed prior convictions.[8]  Because Baker conceded the existence of these convictions at his original sentencing, Judge Motyka could find this aggravating factor without submitting the issue to a jury.

Baker also contends that Judge Motyka violated *Blakely* by finding aggravating factor AS 12.55.155(c)(12)—that Baker was on release for another felony charge or conviction at the time he committed his present offense.  But Judge Motyka found that court documents clearly established that Baker was on felony release at the time of his offense, and Baker conceded this aggravator at his original sentencing.[9]  Since it was undisputed that Baker was on release for another felony at the time he committed his present offenses, any error in depriving him of a jury trial on this aggravating factor was harmless beyond a reasonable doubt.[10]  Furthermore, to comply with *Blakely*, the court needed to find only a single *Blakely*-compliant aggravating factor.[11]  Thus, the (c)(15) aggravator of three or more felony convictions was independently sufficient authority for Baker's sentence.

Baker next argues that, under the state constitution, we should reject the federal cases adopting a prior conviction exception to *Blakely*.  In other words, he argues that, under state law, the fact of a prior conviction must be found by a jury, not a judge.  We recently rejected this claim in *Active v. State*.[12]  Baker has not convinced us that *Active* was wrongly decided.

Baker also argues that Judge Motyka erred by finding that he was a "worst offender."  In Alaska, courts normally may not impose a maximum sentence for a felony offense without a worst offender finding.[13]  Baker argues that, under *Blakely*, this worst offender finding must be made by a jury.

In *Simon v. State*,[14] we observed that other states have held that a worst offender classification need not be submitted to a jury under *Blakely*.[15]  Some states have concluded that a worst offender classification is "a traditional component of sentencing-a legal assessment of the significance of the proved facts of the defendant's conduct and background for purposes of exercising sentencing discretion."[16]  Other states have held that a worst offender finding is not covered by *Blakely* if other aggravating factors have already been proved in conformity with *Blakely*—thus establishing the judge's authority to impose a sentence within the higher range.[17]  In *Simon*, we found it unnecessary to decide what rule to adopt as a matter of Alaska law.[18]

We now hold that a defendant is not entitled to a jury trial on the issue of whether he or she is a worst offender.  In Baker's case, the jury's verdict and Judge Motyka's finding of at least one *Blakely*-compliant aggravating factor authorized a sentence of up to 11½ years of imprisonment.  State law required Judge Motyka to find that Baker was a worst offender before he imposed that maximum sentence.  But that finding is based on traditional sentencing criteria—that the characteristics of the offense and/or the offender justify the imposition of a maximum sentence.[19]  The worst offender rule directs a sentencing judge to articulate substantial reasons for imposing a maximum sentence.  Requiring the sentencing judge to make this finding facilitates appellate review of sen-

8.  *State v. Avery,* 130 P.3d 959, 962 (Alaska App. 2006).

9.  *Baker,* 110 P.3d at 1001.

10.  *See Tyler v. State,* 133 P.3d 686, 689 (Alaska App.2006).

11.  *See Cleveland v. State,* 143 P.3d 977, 984–85 (Alaska App.2006).

12.  153 P.3d 355, 367 (Alaska App.2007).

13.  *Galaktionoff v. State,* 486 P.2d 919, 924 (Alaska 1971).

14.  121 P.3d 815 (Alaska App.2005).

15.  *Id.* at 819–20.

16.  *Id.* at 819.

17.  *Id.* at 820.

18.  *Id.*

19.  *See State v. Wortham,* 537 P.2d 1117, 1120 (Alaska 1975).

tencing. It also promotes the legislature's goals of eliminating unjustified disparity in sentencing and attaining reasonable uniformity in sentencing.[20] Because we conclude that a worst offender finding is not the type of factual issue that must be submitted to a jury under *Blakely*, we reject Baker's claim that the court erred in finding him a worst offender.

Baker next contends that *Blakely* aggravators must be presented to the grand jury. Baker concedes that this court has already considered this issue and rejected his argument. In *State v. Dague*,[21] we determined that a defendant does not have a right to grand jury indictment on an aggravating factor.[22] We adhere to that decision.

Baker contends that holding a hearing after trial to determine aggravating factors violates his federal and state double jeopardy rights. But as we discussed in *Dague*, there is no double jeopardy violation when a later proceeding is held to cure a *Blakely* error.[23] We therefore reject Baker's claim.

■ Baker argues that convicting him for driving while intoxicated and also convicting him for refusing to take the breath test violates the Double Jeopardy Clause of the United States and Alaska constitutions. Baker's argument hinges on his contention that driving while intoxicated is a lesser-included offense of refusal to take the breath test. But they are clearly separate offenses.

In 1999, the crime of DWI was defined in AS 28.35.030(a)(1) as follows: "A person commits the crime of driving while intoxicated if the person operates or drives a motor vehicle or operates an aircraft or a watercraft while under the influence of intoxicating liquor."[24] In 1999, the crime of breath test refusal was defined in AS 28.35.032(a) as follows:

> If a person under arrest for operating a motor vehicle or aircraft while intoxicated refuses the request of a law enforcement officer to submit to a chemical test authorized under AS 28.33.031(a)(1) or AS 28.35.031(a), ... after being advised by the officer that the refusal will result in the denial or revocation of the driver's license, privilege to drive, or privilege to obtain a license, that the refusal may be used against the person in a civil or criminal action or proceeding arising out of an act alleged to have been committed by the person while operating a motor vehicle or aircraft while intoxicated, and that the refusal is a crime, a chemical test may not be given.[25]

To convict Baker of DWI, the State had to prove that Baker was actually driving while intoxicated.[26] In contrast, the State did not have to prove that Baker was driving while intoxicated to convict him of breath test refusal, only that he was legally under arrest for DWI.[27]

Similarly, the State had to prove that Baker refused to submit to a breath test in order for Baker to be convicted of breath test refusal.[28] The State did not have to prove that Baker refused to submit to a breath test for Baker to be convicted of DWI.[29]

In *Wilson v. State*,[30] we noted that there is nothing inconsistent in a jury finding a defendant guilty of breath test refusal but not reaching a decision on whether the defendant

**20.** AS 12.55.005; *cf. Vandergriff v. State,* 125 P.3d 360, 363 (Alaska App.2005) and 370–72 (Mannheimer, J., concurring) (explaining that the right to jury trial announced in *Blakely* does not apply to a finding under the *Neal–Mutschler* rule that a composite term to serve exceeding the maximum term for the defendant's single most serious crime is necessary to protect the public (discussing *Neal v. State,* 628 P.2d 19 (Alaska 1981) and *Mutschler v. State,* 560 P.2d 377 (Alaska 1977))).

**21.** 143 P.3d 988 (Alaska App.2006).

**22.** *Id.* at 991.

**23.** *Id.* at 1013–14.

**24.** Former AS 28.35.030(a)(1) (1999).

**25.** Former AS 28.35.032(a) (1999).

**26.** *See* former AS 28.35.030(a) (1999).

**27.** *See* former AS 28.35.032(a) (1999).

**28.** *See* former AS 28.35.032(a) (1999).

**29.** *See* former AS 28.35.030(a) (1999).

**30.** 680 P.2d 1173 (Alaska App.1984).

was guilty of DWI.[31] In *Garrison v. State*,[32] an unpublished decision, we held "that the double jeopardy clause does not prohibit the State from convicting a defendant of both driving while intoxicated and refusal to take a breath test arising from the same incident."[33] Lastly, in *Brown v. State*,[34] we stated: "Driving while intoxicated and refusing a breath or blood test are separate offenses permitting separate convictions and separate sentences."[35] We therefore reject Baker's double jeopardy arguments.

Baker contends that his fines for DWI and breath test refusal should be concurrent. At resentencing, Baker asked Judge Motyka to impose the fines concurrently. Judge Motyka granted this request. But the written judgment states that the fines are consecutive. The State concedes error. We have previously held that a judge's oral sentencing remarks control over any conflicting provision in the written judgment.[36] We therefore direct the trial court to correct the written judgment to reflect that the fines for DWI and breath test refusal are concurrent.

■ Judge Motyka ordered Baker's driver's license revoked for 5 years for each conviction, and he ordered these sentences to be consecutive to each other. Baker argues that Judge Motyka did not have the authority to impose the driver's license revocations consecutively. But in *Snyder v. State*,[37] we indicated that a sentencing judge has the discretion to impose the license revocation penalties for DWI and breath test refusal consecutively or concurrently.[38] The record shows that Judge Motyka considered imposing the license revocations concurrently but concluded that it was appropriate to impose the license revocations consecutively. Given Baker's extensive record, we conclude that Judge Motyka's decision to impose the revocations consecutively was not clearly mistaken.[39]

*Baker's claim that his sentence is excessive*

■ To understand Baker's sentence, we need to consider two incidents, approximately one month apart, in which Baker drove while intoxicated. The first incident occurred in Kenai on April 5, 1999. We discussed this incident in our former decision in this case:

On April 5, 1999, motorists reported seeing Baker drive through a red light, over curbs, and in excess of 80 miles per hour. Soldotna Police Officer Joseph Shoemaker saw Baker lose control of his car just before he stopped him. Shoemaker concluded that Baker was intoxicated and arrested him.

At the police station, Baker yelled and screamed while the officer read the implied consent warning. Baker refused to submit to a breath test.

On the way to a correctional facility, Baker managed to release his safety belt and to bring his handcuffed hands in front of him. He cursed at Officer Shoemaker and threatened the officer and his family.[40]

As noted earlier, Baker was ultimately convicted of driving while intoxicated and felony refusal to submit to a breath test.[41] Both offenses are class C felonies.[42] Superior

---

**31.** *Id.* at 1179.

**32.** Alaska App. Memorandum Opinion and Judgment No. 4576 (May 29, 2002), 2002 WL 1150738.

**33.** *Id.* at 2, 2002 WL 1150738 at *1.

**34.** 739 P.2d 182 (Alaska App.1987).

**35.** *Id.* at 183 n. 1 (citing *Whitton v. State*, 479 P.2d 302 (Alaska 1970)).

**36.** *See, e.g., Graybill v. State*, 822 P.2d 1386, 1388 (Alaska App.1991); *Figueroa v. State*, 689 P.2d 512, 514 (Alaska App.1984). *See also Whittlesey v. State*, 626 P.2d 1066, 1067–68 (Alaska 1980).

**37.** 879 P.2d 1025 (Alaska App.1994), *rev'd on other grounds*, 930 P.2d 1274 (Alaska 1996).

**38.** *Id.* at 1030.

**39.** *See McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

**40.** *Baker*, 110 P.3d at 1000 (internal footnotes omitted).

**41.** *Id.*

**42.** *Id.* (citing AS 28.35.030(a)(1) or (2), (n); AS 28.35.032(a), (p)).

Court Judge Jonathan H. Link sentenced Baker to a composite 5 years of imprisonment for these offenses.[43]

Baker was released on bond from the Kenai offenses on April 16, 1999. His present offense occurred in Anchorage three weeks later on May 4, 1999. We discussed that case in our former decision:

> On May 4, 1999, Anchorage Police Officer Richard Steiding observed Fred A. Baker driving erratically. Baker stopped abruptly at 13th Avenue, proceeded through the parking lot of the Carrs supermarket at the speed of 15–20 miles per hour, cut across the parking lot, and drove down the sidewalk, traveling eastbound on 13th Avenue. Officer Steiding pursued Baker and located the vehicle parked in the Carrs parking lot, parked in front of a "No Parking" sign. Anchorage Police Officer Joel Breiner arrived to assist and subsequently arrested Baker. Officer Breiner transported Baker to a police substation for processing.
>
> Baker twice refused to take a breath test. Baker asked for an independent test and was transported to Alaska Regional Hospital, where he insisted on having only a urine test. Baker's urine tested positive for alcohol, cocaine and marijuana. While he was being taken to the magistrate for a bail hearing, Baker began growling and biting the backseat of the officer's patrol car. The officers restrained Baker, but he remained combative despite the restraints.
>
> Baker was indicted on one count each of felony driving while intoxicated and felony refusal to submit to a chemical test. He was also charged with driving while license revoked, and third-degree criminal mischief. A jury convicted Baker of all the charges.[44]

In our former decision, we also discussed Baker's prior criminal record:

> Baker was 37 years old at the time he committed the Anchorage offenses. Baker's first felony conviction took place in 1981 when he was 19 years old. He was convicted of possession of marijuana for

sale and sentenced to 120 days in jail. In the 1980s, Baker accumulated approximately 12 misdemeanor offenses. Most of these offenses are for driving without an operator's license or for driving while his license was suspended. In 1990, Baker was convicted of his second felony offense, making a false statement on a title application. Baker was sentenced to 1 year suspended and placed on 3 years' probation. But his probation was revoked in 1992 and Baker was ordered to serve 1 year of imprisonment. In September 1991, Baker was convicted of misconduct involving a weapon in the first degree, then a class C felony. He was sentenced to 3 years with 1 year suspended.

> In 1997, Baker committed his first driving while intoxicated offense. In this case, Baker was involved in a motor vehicle collision. Less than a month later, Baker was convicted of his second driving while intoxicated offense and for driving while his license was suspended. Two months later, Baker again drove while his license was suspended. Baker's Kenai offenses occurred April 5, 1999 and his Anchorage offenses occurred less than 30 days after.[45]

We discussed Judge Motyka's sentencing findings as follows:

> In sentencing Baker, Judge Motyka considered Baker's prior criminal history. He concluded that Baker was a worst offender with poor prospects for rehabilitation. He pointed out that Baker had consistently failed on probation. He considered Baker's actions and his sentence [in the Kenai case—6 years at the time, later reduced to 5 years]. He pointed out, at the time that Baker committed the Anchorage offenses, he had just been released on felony driving while intoxicated and refusal charges knowing that he faced a substantial sentence in the Kenai case. Yet he had committed similar offenses in Anchorage. He concluded that this sequence of events showed that Baker was completely out of control. Judge Motyka imposed a sen-

43. *Id.*

44. *Id.* at 997–98.

45. *Id.* at 1001.

tence of 5 years for felony driving while intoxicated, 5 years for felony refusal to take the chemical test, 1 year for license revoked and 6 months for criminal mischief in the third degree. Judge Motyka imposed these sentences consecutively to each other for a composite sentence on the Anchorage case of 11½ years of imprisonment.[46]

In our former decision we stated that, since Judge Motyka had not specified whether his sentence was concurrent or consecutive to the Kenai sentence, Judge Motyka's sentencing remarks on this point were "at best, ambiguous." [47] We therefore concluded that it was "reasonable to interpret Judge Motyka's remarks as imposing a sentence of 11½ years to be served concurrently with the Kenai sentence." [48]

We also concluded that Judge Motyka had erred in finding the aggravating factor that Baker had previously been convicted of a more serious felony and in concluding that he was required by law to impose Baker's 3-year presumptive sentence for felony refusal to take a breath test consecutively to the sentence for felony driving while intoxicated.[49] We therefore remanded for resentencing.

At resentencing, Judge Motyka again imposed 11½ years of imprisonment. Judge Motyka again found that Baker was a "worst offender." He emphasized that, based on Baker's extensive record of driving while intoxicated offenses and his complete failure to address his substance abuse problems, Baker was a demonstrated danger to the public. He pointed out that Baker was on release for only a short period of time on the Kenai offenses when he committed his present offenses, knowing that he faced a substantial sentence. He pointed out that in Baker's current driving while intoxicated offense, Baker could easily have killed someone.

On appeal, Baker claims that his sentence is excessive. In particular, Baker contends that his sentence is similar to sentences in which defendants have killed or seriously injured someone when they are driving while intoxicated. For instance, in *Pusich v. State*,[50] we pointed out that a "survey of prior cases reveals that both the supreme court and this court have affirmed sentences of 10 to 13 years' imprisonment for vehicular homicide." [51] (In *Pusich*, we upheld a sentence of 25 years with 7 years suspended based on the particularly egregious facts of that case.[52])

In analyzing the sentence Baker received, we note that the sentence is concurrent with the 5–year sentence that Baker was already serving for his Kenai conviction. Baker was a third felony offender for purposes of presumptive sentencing. He therefore faced a presumptive term of 3 years of imprisonment on each of the two class C felonies (breath test refusal and DWI).[53] The minimum sentences for the breath test refusal and DWI had to be consecutive, so the starting point for Baker's sentence was 3 years, 120 days. At the time of his Anchorage offenses, Baker was facing serious felony charges in Kenai, yet he left his third-party custodian, drove in Anchorage while intoxicated, and then drove on the sidewalk. Under these circumstances, Judge Motyka, in Baker's original sentence, could have properly decided to impose a substantial sentence consecutive to the time that Baker faced on the Kenai convictions.

In addition, Baker was almost forty years old at the time of the charged conduct and had a total of twenty-four prior convictions, including several felonies. In addition to his DWI offenses, Baker had been convicted seven times for driving while his license was suspended and five times for driving without a valid license. Judge Motyka concluded,

**46.** *Id.* at 1001.

**47.** *Id.* at 1002.

**48.** *Id.* at 1003.

**49.** *Id.* at 1003–04.

**50.** 907 P.2d 29 (Alaska App.1995).

**51.** *Id.* at 38.

**52.** *Id.* at 31, 39.

**53.** *Baker,* 110 P.3d at 1000.

based upon Baker's prior record and his current convictions, that it was necessary to impose 11½ years of imprisonment to protect the public, because Baker was eventually going to kill someone if he was not incarcerated. Judge Motyka's findings are supported by the record and support the sentence that he imposed. We conclude that the sentence is not clearly mistaken.[54]

AFFIRMED and REMANDED.

**54.** *See McClain,* 519 P.2d at 813–14.