Jimmy Jack **KORKOW**, Appellant,

v.

**STATE of Alaska, Appellee.**

No. A–10488.

Court of Appeals of Alaska.

Sept. 2, 2011.

9.  *See* AS 09.19.200(g)(3).

10.  *See* AS 11.41.425(a)(2).

11.  *See* AS 11.56.375, .380.

12.  *See* AS 12.30.027(d).

13.  *See* AS 12.55.041(a).

14.  *See* AS 12.63.010(a)(1).

15.  *See* AS 12.55.025(c).

16.  *See* AS 33.20.010(a).

17.  *See* AS 33.16.250(a).

18.  *See* AS 12.55.125(*o* ).

Glenda Kerry, Law Office of Glenda J. Kerry, Girdwood, for the Appellant.

Mara E. Michaletz, Assistant District Attorney, Adrienne Bachman, District Attorney, Anchorage, and Richard A. Svobodny, Acting Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

*OPINION*

COATS, Chief Judge.

Jimmy Jack Korkow stabbed his wife sixty-two times while their children slept nearby. Following this attack, Korkow turned himself in to the police. The jury convicted Korkow of murder in the first degree. Superior Court Judge Eric Aarseth sentenced Korkow to ninety-nine years of imprison-

1. AS 11.41.100(a)(1)(A).

ment. In addition, Judge Aarseth ordered that Korkow's eligibility for discretionary parole be restricted until he had served at least fifty years of his sentence. On appeal, Korkow does not attack his sentence of ninety-nine years of imprisonment, but he does attack the restriction on his parole eligibility. By statute, Korkow's ability to apply for discretionary parole is already restricted for thirty-three years, when he will be sixty-seven years old. He argues, and we agree, that the additional restriction on his parole is excessive.

*Factual and procedural background*

Korkow appeared at the Alaska State Trooper post in Soldotna early one morning in March 2005. He told the troopers that he had done something bad and requested that the police go to his apartment in Anchorage. Upon arriving at Korkow's Anchorage residence, officers discovered a lurid scene: Korkow's wife, Teresa, lay dead and wrapped in bedding on the living room floor. A knife protruded from Teresa's left ear, and another knife was buried to the hilt in her chest. Two more knives with bent blades were located near the body. In all, Teresa had been stabbed at least sixty-two times with four different knives. Police also discovered a broken tequila bottle near Teresa's body, and the autopsy revealed that she suffered blunt force trauma to her head. The Korkows' three children—aged six, seven, and eleven—were discovered asleep in the apartment. The eleven-year-old was in her closet. She later explained that she had gone into the closet to muffle the sounds of her mother screaming.

The State indicted Korkow for murder in the first degree.[1] Korkow was convicted on this charge in a jury trial conducted by Judge Aarseth.

In sentencing Korkow, Judge Aarseth first observed that, while Korkow had a prior criminal record, it was "not that remarkable." He concluded that Korkow's prior offenses were "relatively innocuous." Giving Korkow the benefit of the doubt, he concluded that the murder was motivated by ex-

**934**

treme rage and that there was no evidence that Korkow had tortured his wife.

Judge Aarseth primarily based Korkow's sentence on the brutality of his attack on his wife. He explained that Korkow had struck Teresa in the head with a blunt object, probably a tequila bottle, and had proceeded to stab her sixty-two times. Korkow had used very long knives, and each of the sixty-two deep wounds he inflicted could have caused serious injury or death. Judge Aarseth concluded that Korkow "focused on grievously mutilating [Teresa's] body," exhibiting a "very sick state of mind."

Judge Aarseth concluded that the crime was additionally aggravated by the fact that Korkow's three children were in the home and at least one child knew something was happening, as she was found sleeping or hiding in her closet. He found that Korkow was a "worst offender" because he had killed his wife, with whom he was supposed to be in a trusting relationship, and because Korkow committed the murder in the presence of their children.

Judge Aarseth explained his decision to restrict Korkow's eligibility for parole. He concluded that, based upon the severity of the case and Korkow's lack of remorse, it was necessary to restrict Korkow's eligibility for parole in order to protect the public and Korkow's children. He pointed out that, by statute, Korkow would be eligible for parole after serving thirty-three and one-third years, when he would be almost seventy years old. Judge Aarseth stated that, at that time, Korkow's children would be in their forties and would, in all probability, have families of their own. He concluded that, to protect Korkow's children, as well as the rest of society, he needed to restrict Korkow's parole until he had served fifty years of his sentence.

*Why we conclude that the restriction on Korkow's parole was clearly mistaken*

2. AS 33.16.090(b)(1).

3. AS 12.55.115.

4. *Cheely v. State,* 861 P.2d 1168, 1181 (Alaska App.1993).

By statute, Korkow had to serve one-third of his ninety-nine-year sentence before being eligible for discretionary parole.[2] A sentencing judge has the authority to additionally restrict a defendant's eligibility for discretionary parole.[3] But, when the sentencing court imposes a lengthy sentence, "Alaska law presumes that questions of discretionary release are better left to the Parole Board, since the Board evaluates the advisability of parole release in light of the defendant's tested response to Department of Corrections rehabilitative measures."[4] We have also indicated that a sentencing court should not place "inordinate emphasis ... on predictions of possible future misconduct."[5]

These cases derive from the recognition that judicial officers have a limited ability to predict the future at the time of sentencing. In contrast, the Parole Board is an institution which is designed to review whether a defendant, after serving a portion of a sentence, can be safely released from imprisonment. Unlike the sentencing court, the Parole Board is in a position to make its decision after the defendant has served a substantial portion of the sentence, and in light of the defendant's observed behavior and attitude during years spent in the custody of the Department of Corrections.

Deference to the Parole Board seems appropriate under the facts of this case. Judge Aarseth found that, although Korkow had a criminal record, his criminal record was "not that remarkable" and was "relatively innocuous." In addition, Judge Aarseth concluded that Korkow's offense was motivated by rage, but there is no evidence that Korkow has a history of similar assaultive behavior.

Korkow's assault on his wife was horrific. And the sheer brutality of the assault, coupled with the fact that it occurred while Korkow's children were asleep in the house, justified a substantial sentence. But Judge

5. *Skrepich v. State,* 740 P.2d 950, 954 (Alaska App.1987); *Maal v. State,* 670 P.2d 708, 711 (Alaska App.1983).

Aarseth sentenced Korkow to the maximum ninety-nine years of imprisonment.

As we have pointed out, by statute, Korkow is not eligible for parole for thirty-three years, when he will be sixty-seven years old. And just because Korkow is eligible to apply for parole does not mean that he will be paroled. In fact, the Alaska Supreme Court has cautioned sentencing judges to sentence defendants "on the assumption that the entire term may be served." [6]

Judge Aarseth's decision to additionally restrict Korkow's eligibility for discretionary parole was based upon predictions that Korkow would be dangerous to the public and might constitute a danger to his then middle-aged children and their children. This is certainly a possibility, but a speculative one at best. Because the Parole Board will be making its decision far in the future, the Parole Board has significant advantages over the sentencing court in making this decision. We conclude that, given the record in this case, and given the length of Korkow's sentence of imprisonment, Judge Aarseth's decision imposing the additional restriction on Korkow's eligibility for discretionary parole is clearly mistaken.[7]

Korkow makes one additional argument: Korkow argues that Judge Aarseth erred in not making corrections to a psychological report which was attached to the presentence report. The record shows that Korkow waived this issue at sentencing by agreeing to file an addendum to the report. There is, however, one obvious misstatement in the psychological report that should be corrected: The report states that Korkow had a prior felony assault conviction. This is incorrect; the conviction was for misdemeanor assault.

*Conclusion*

The parole restriction is REVERSED, and the superior court shall amend the judgment and the psychological report as specified in this opinion.

BOLGER, Judge, dissenting.

BOLGER, Judge, dissenting.

Jimmy Korkow committed a singularly callous murder. He stabbed his wife sixty-two times while their daughters slept nearby, then left her body on the living room floor with knives sticking out of her chest and her ear. After explaining the relevant sentencing considerations, Judge Aarseth reasonably concluded that Korkow should remain in prison until he reaches an advanced age.

Judge Aarseth made detailed findings explaining his decision to restrict Korkow's parole eligibility.[1] The question we must determine is whether his decision was clearly mistaken.[2] We apply this test "not by imposition of an artificial ceiling[,] which limits a large class of offenses to the lower end of the sentencing spectrum, but, rather, by an examination of the particular facts of the individual case in light of the *total range of sentences authorized by the legislature.*"[3]

Judge Aarseth found that Korkow "focused on grievously mutilating [his wife's] body," exhibiting a "very sick state of mind." The judge also found that Korkow's children were present and that one child heard their father kill their mother—a "very significant" factor in his sentencing decision.

The judge explained that his primary sentencing goal was to protect Korkow's children so that they could live their lives and eventually raise their own families without fear. The judge also intended to reaffirm social norms by sending a message that murdering one's spouse is not an acceptable way of dealing with marital stress.

6. *Jackson v. State,* 616 P.2d 23, 24–25 (Alaska 1980).

7. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

1. AS 12.55.115 provides, "The court may, as part of a sentence of imprisonment, further restrict the eligibility of a prisoner for discretionary pa-

role for a term greater than that required under [the parole statutes]."

2. *Stern v. State,* 827 P.2d 442, 450 (Alaska App. 1992) (reviewing a parole restriction to determine if it was clearly mistaken).

3. *State v. Wentz,* 805 P.2d 962, 965 (Alaska 1991) (emphasis in original).

The judge found that there was a "real concern" that Korkow would violently attack his family in the future, given the unprovoked nature of this "atrocious crime." The judge explained that this brutal incident indicated that Korkow had "a complete lack of concern" for anyone other than himself and that he could not be trusted to live in a free society.

Judge Aarseth estimated that Korkow would normally be eligible for parole when he was about seventy years old and that his children would then be forty-four to forty-nine years of age. The judge explained why this possibility raised a serious concern for the protection of Korkow's children and society at large:

> Based on the severity of this case, from what I perceive as your lack of remorse, the lack of concern you expressed ... [at] the time you committed this offense for your family members including the children, ... I find [for] the protection of the children left behind ... and all others ... in society that I do need to restrict your parole and I will restrict it until you've served fifty years of your sentence. At that time, concerns regarding your potential for rehabilitation can be considered by the parole board, but before then, the protection of the public, of your children, of their children are going to come first.

The judge thus specifically addressed why the normal parole eligibility term would be insufficient to protect the public and ensure Korkow's reformation. The judge could reasonably conclude that Korkow would be more feeble, and consequently less dangerous, if he was released at age eighty-three compared to his normal parole eligibility at age sixty-six.

We recently addressed a similar sentencing issue when we upheld the constitutionality of a statute that imposed a sentence of ninety-nine years' imprisonment without discretionary parole for the murder of a police officer.[4] We recognized that the legislature could reasonably conclude that a lifetime parole restriction was consistent with the constitutional goals of punishment—to protect the public from such a brazen offender, to express community condemnation for an attack on an officer engaged in his official duties, and to deter the defendant and others from committing similar crimes.[5]

In this case, Judge Aarseth's more limited decision to restrict Korkow's parole eligibility for fifty years was likewise supported by several of the constitutional goals of punishment. The judge explained why a parole restriction was necessary to protect Korkow's children and the public at large. The judge also relied on the cruel and unprovoked nature of this crime and Korkow's lack of remorse to explain why rehabilitation was not a practical consideration. Moreover, the parole restriction directly promoted the judge's primary sentencing consideration—the rights of Korkow's children as the surviving victims of this crime.

In my opinion, the judge's findings are consistent with the discretion granted by statute, the limits imposed by the Alaska Constitution, and the facts of this heinous offense. I would affirm.

4. *Forster v. State,* 236 P.3d 1157, 1174–75 (Alaska App.2010).

5. *Id.*