*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| STATE OF ALASKA, | ) | |
| | ) | Supreme Court No. S-14468 |
| Petitioner, | ) | Court of Appeals No. A-10488 |
| | ) | Superior Court No. 3AN-05-01915 CR |
| v. | ) | |
| | ) | O P I N I O N |
| JIMMY JACK KORKOW, | ) | |
| | ) | No. 6856 - December 13, 2013 |
| Respondent. | ) | |
| | ) | |

Petition for Hearing from the Court of Appeals of the State of Alaska, on appeal from the Superior Court, Third Judicial District, Anchorage, Eric A. Aarseth, Judge.

Appearances: Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions & Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Petitioner. Glenda Kerry, Law Office of Glenda J. Kerry, Girdwood, for Respondent.

Before: Fabe, Chief Justice, Carpeneti, Winfree, Stowers and Maassen, Justices.

WINFREE, Justice.

## I. INTRODUCTION

Jimmy Jack Korkow was convicted of first-degree murder for beating and stabbing his wife to death while the couple's young children were present in the family home. The trial court sentenced Korkow to 99 years in prison with no possibility for discretionary parole until he served 50 years. The court of appeals reversed the 50-year

parole restriction as clearly mistaken, and we granted the State of Alaska's petition for hearing on that issue. Because the trial court correctly applied the statutory restriction on parole after making sufficient findings supported by the record, we reverse the court of appeals and hold that the restriction was not excessive.

## II. FACTS AND PROCEEDINGS

In March 2005 Jimmy Jack Korkow killed his wife in their apartment, beating her and inflicting at least 62 stab wounds. The Korkows' three youngest daughters were in the apartment at the time; at least one of them was aware of the attack and moved from her bed into a closet. Korkow was convicted of first-degree murder after a jury trial. The trial court imposed the maximum sentence of 99 years with no suspended time and restricted Korkow's eligibility for discretionary parole beyond the 33-year statutory minimum until he served at least 50 years of his sentence. The trial court imposed its parole limitation in light of the severity of Korkow's actions, his lack of remorse, and the need to protect his children and the general public.

The court of appeals reversed the trial court's parole limitation as clearly mistaken, basing its decision on a presumption that when a lengthy sentence is imposed discretionary parole questions are better left to the Parole Board because it can evaluate the parole applicant's "tested response to Department of Corrections rehabilitative measures."[1] Reiterating language from its earlier cases, the court emphasized that trial courts "should not place 'inordinate emphasis . . . on predictions of possible future

---

[1] *Korkow v. State*, 258 P.3d 932, 934 (Alaska App. 2011) (quoting *Cheely v. State*, 861 P.2d 1168, 1181 (Alaska App. 1993)).

misconduct,' "[2] and concluded the trial court's concern that Korkow was a danger to his children and the public was "speculative . . . at best."[3]

We granted the State's petition for hearing to consider: (1) the efficacy of the court of appeals' "presumption"; and (2) what factors should be considered when restricting parole eligibility.

## III. STANDARD OF REVIEW

Sentencing decisions are reviewed under the clearly mistaken standard, giving deference to the sentencing court.[4] "[T]he clearly mistaken test implies a permissible range of reasonable sentences which a reviewing court, after an independent review of the record, will not modify."[5] This test is "founded on two concepts: first, that reasonable judges, confronted with identical facts, can and will differ on what constitutes an appropriate sentence; [and] second, that society is willing to accept these sentencing discrepancies, so long as a judge's sentencing decision falls within 'a permissible range of reasonable sentences.' "[6]

The interpretation of a statute is a question of law to which we apply our independent judgment, adopting "the rule of law that is most persuasive in view of

---

[2]      *Id.* (quoting *Skrepich v. State*, 740 P.2d 950, 954 (Alaska App. 1987); *Maal v. State*, 670 P.2d 708, 711 (Alaska App. 1983)).

[3]      *Id.* at 935.

[4]      *State v. Hodari*, 996 P.2d 1230, 1232 (Alaska 2000) (citing *McClain v. State*, 519 P.2d 811, 813-14 (Alaska 1974)).

[5]      *Id.* (quoting *McClain*, 519 P.2d at 813).

[6]      *Id.* (quoting *Erickson v. State*, 950 P.2d 580, 586 (Alaska App. 1997)).

precedent, reason, and policy."[7]  "When interpreting a statute, we look first at the statute's language, legislative history, and legislative purpose."[8]  "[U]nder our sliding-scale approach to statutory interpretation . . . 'the plainer the language of the statute, the more convincing any contrary legislative history must be' " to overcome the statute's plain meaning.[9]

## IV.    DISCUSSION

### A.    Alaska's Sentencing And Parole Framework

Alaska's statutory sentencing framework aims to ensure "the elimination of unjustified disparity and the attainment of reasonable uniformity in sentences."[10] First-degree murder carries mandatory terms of 20 years minimum and 99 years maximum, and sentencing courts may impose a sentence within that range.[11]  Sentencing courts must consider the factors set out in AS 12.55.005 when imposing sentences.[12]

---

[7]     *State, Dep't of Corr. v. Heisey*, 271 P.3d 1082, 1085 (Alaska 2012) (quoting *Ruckle v. Anchorage Sch. Dist.*, 85 P.3d 1030, 1034 (Alaska 2004)).

[8]     *Id.* at 1086 (citing *Shehata v. Salvation Army*, 225 P.3d 1106, 1114 (Alaska 2010)).

[9]     *Ward v. State, Dep't of Pub. Safety*, 288 P.3d 94, 98 (Alaska 2012) (quoting *Bartley v. State, Dep't of Admin., Teachers' Ret. Bd.*, 110 P.3d 1254, 1258 (Alaska 2005)).

[10]     AS 12.55.005.

[11]     AS 12.55.125(a).

[12]     These factors incorporate the criteria we outlined in *State v. Chaney*,  477 P.2d 441, 444 (Alaska 1970).  *See Nell v. State*, 642 P.2d 1361, 1369 (Alaska App. 1982) ("The *Chaney* criteria have essentially been incorporated into the criminal code as AS 12.55.005.").  The enumerated factors in AS 12.55.005 are:

(1) the seriousness of the defendant's present offense

(continued...)

With murder convictions, sentencing courts may, but are not required to, increase or decrease a sentence based on findings of statutory aggravating or mitigating factors.[13] Finally, "maximum sentences generally should not be imposed without some foundation for characterizing a defendant as the worst type of offender."[14]

A prisoner is eligible for discretionary-parole consideration after serving (1) "one-third of the active term of imprisonment imposed,"[15] or (2) a longer time period

---

[12] (...continued)
in relation to other offenses;

(2) the prior criminal history of the defendant and the likelihood of rehabilitation;

(3) the need to confine the defendant to prevent further harm to the public;

(4) the circumstances of the offense and the extent to which the offense harmed the victim or endangered the public safety or order;

(5) the effect of the sentence to be imposed in deterring the defendant or other members of society from future criminal conduct;

(6) the effect of the sentence to be imposed as a community condemnation of the criminal act and as a reaffirmation of societal norms; and

(7) the restoration of the victim and the community.

[13] AS 12.55.155; *see Allen v. State*, 56 P.3d 683, 684 (Alaska App. 2002) (approving use of factors by analogy in murder sentencing).

[14] *State v. Wortham*, 537 P.2d 1117, 1120 (Alaska 1975) (citation and quotation marks omitted) (cited in *State v. Graybill*, 695 P.2d 725, 728 (Alaska 1985); *Baker v. State*, 182 P.3d 655, 658 (Alaska App. 2008)).

[15] *See* AS 33.16.090(b)(1).

the sentencing court sets as part of the sentence.[16] When a prisoner becomes eligible for discretionary parole, it may be granted by the Parole Board under the standards set out in AS 33.16.100.[17]

> **B. Korkow's Sentence**

At Korkow's sentencing hearing following his first-degree murder conviction, the superior court made a worst offender finding. The court also found four aggravating factors: (1) a history of prior assaultive conduct;[18] (2) conduct among the most serious included in the first-degree murder definition;[19] (3) an offense committed

---

[16] *See* AS 12.55.115; *see also State v. Malloy*, 46 P.3d 949, 954 (Alaska 2002) (noting that sentencing courts have authority to restrict a defendant's eligibility for parole when imposing a 99-year term of imprisonment).

[17] AS 33.16.100(a) provides:

> The board may authorize the release of a prisoner on discretionary parole if it determines a reasonable probability exists that
>
> (1) the prisoner will live and remain at liberty without violating any laws or conditions imposed by the board;
>
> (2) the prisoner's rehabilitation and reintegration into society will be furthered by release on parole;
>
> (3) the prisoner will not pose a threat of harm to the public if released on parole; and
>
> (4) release of the prisoner on parole would not diminish the seriousness of the crime.

[18] *See* AS 12.55.155(c)(8).

[19] *See* AS 12.55.155(c)(10).

against a spouse;[20] and (4) an offense committed in the physical presence of a child under 16 years of age living with both the perpetrator and victim.[21] The court relied primarily on the last two aggravating factors in fashioning its sentence.

Considering relevant *Chaney* factors — including protection of Korkow's children, reinforcement of societal norms, community condemnation, and isolation of the criminal — the court imposed the maximum sentence of 99 years with no suspended time, and restricted Korkow's eligibility for discretionary parole until he served at least 50 years of his sentence. The court explained that based on the severity of the case and Korkow's lack of remorse and concern for others, the restriction was necessary to protect the public, Korkow's children, and their future children. Absent that restriction, Korkow would be eligible for discretionary parole after 33 years.[22]

## C. The Presumption

When reversing the superior court's imposition of a 50-year restriction on Korkow's discretionary parole eligibility, the court of appeals relied upon a legal presumption that when a sentencing court imposes a lengthy sentence, "questions of discretionary release are better left to the Parole Board, since the Board evaluates the advisability of parole release in light of the defendant's tested response to Department of Corrections rehabilitative measures."[23] The State argues that this presumption is incorrect as a matter of statutory interpretation. Korkow contends the court of appeals is correct because the statutory framework makes discretionary parole after serving one-

---

[20]    *See* AS 12.55.155(c)(18)(A).

[21]    *See* AS 12.55.155(c)(18)(C).

[22]    *See* AS 33.16.090(b)(1).

[23]    *Korkow v. State*, 258 P.3d 932, 934 (Alaska App. 2011) (quoting *Cheely v. State*, 861 P.2d 1168, 1181 (Alaska App. 1993)).

third of a sentence the default provision, and therefore presumptively appropriate. We agree with the State.

Alaska Statute 12.55.115 expressly empowers a sentencing court to restrict eligibility for discretionary parole beyond that required by AS 33.16.090 and AS 33.16.100, which, in relevant part, bar release on discretionary parole until one-third of the prisoner's active term has been served.[24] Nothing in these statutes' plain language or legislative history suggests room for a legal presumption limiting a sentencing court's power to restrict discretionary parole eligibility beyond one-third of the prisoner's actual term. And nothing in these statutes' plain language or legislative history suggests sentencing courts are to limit this power out of deference to the Parole Board.

A significant weakness in Korkow's statutory argument is its limitation to "lengthy sentences." If the statutory framework creates a legal presumption that sentencing courts must overcome to impose a longer-than-minimum time period for discretionary parole eligibility, then that legal presumption would apply to all sentences, not just lengthy sentences. The statutory framework is better viewed not as a legal presumption that must be overcome to impose a longer period for discretionary parole eligibility, but rather as a statutory minimum that sentencing courts may not ignore. In a somewhat similar context, we recently rejected an argument that legislatively imposed mandatory minimum periods constitute a "legislative preference."[25]

The common law also does not provide much basis for Korkow's support of the court of appeals' legal presumption. In *Gullard v. State* a young man was convicted of manslaughter and the sentencing court imposed a ten-year sentence with

---

[24]     *See* AS 33.16.090(b)(1), AS 33.16.100(a).

[25]     *See Bottcher v. State*, 300 P.3d 528, 533-34 (Alaska 2013) (rejecting argument that mandatory minimum periods for driver's license revocations constitute a "legislative preference" for imposition of minimum revocation periods).

-8-                                                              6856

one-third to be served without the possibility of parole.[26] We reversed the parole restriction as excessive, stating that in light of the defendant's youth and the sentence's length, "we believe that his eligibility for parole can be more appropriately determined by the parole board in these circumstances."[27] But *Gullard* did not express a general presumption that, at least with lengthy sentences, sentencing courts should leave discretionary parole decisions to the Parole Board and should not impose a restriction on discretionary parole eligibility. More importantly, *Gullard* was effectively repudiated by a 1974 amendment to then-controlling AS 33.15.230(a), taking away a sentencing court's authority to impose a discretionary parole eligibility restriction of less than one-third of the maximum sentence imposed.[28] This amendment was retained and expanded with the 1985 enactment of AS 12.55.115 and AS 33.16.090(b)(1),[29] which set one-third of an active sentence as a *minimum* restriction on both a sentencing court's and the Parole Board's authority to grant discretionary parole.[30] If former AS 33.15.230(a) and

---

[26] 497 P.2d 93 (Alaska 1972) (noting then-controlling AS 33.15.230(a); under that provision sentencing courts had authority to either restrict discretionary parole for any period *up to* one-third of the maximum sentence imposed or specify that parole elibigility would be determined by the Parole Board).

[27] *Id*. at 94.

[28] Ch. 110, § 3, SLA 1974. Under the amended statute, the sentencing court could set the eligibility restriction term or, alternatively, simply "specify that the prisoner is eligible for parole at the time the [Parole] [B]oard determines." Former AS 33.15.230 (amended 1974).

[29] As part of an extensive 1985 revision of the Alaska Parole Administration Act, AS 12.55.115 was enacted and the existing parole administration statutory framework of AS 33.15 was repealed and replaced with the statutory framework of AS 33.16. *See* Ch. 88, § 1, SLA 1985.

[30] AS 33.16.090(b)(1).

AS 33.16.090(b)(1) reveal anything about the legislature's post-*Gullard* view of when prisoners should be released on discretionary parole, they reveal a view favoring new and greater eligibility restrictions — we do not agree that the 1985 statutory framework carried with it a common law presumption that, with respect to lengthy sentences, sentencing courts should not impose more than the statutory minimum restriction on discretionary parole eligibility in deference to the Parole Board.

We conclude that when imposing a discretionary parole eligibility restriction beyond the statutory minimum for any sentence, (1) a sentencing court may consider whether the Parole Board will at a later date be better able to assess the defendant's prospects for successful parole, but (2) there is no legal presumption against a restriction beyond the statutory minimum set by AS 33.16.090(b)(1).

### D.    Parole Eligibility Restriction Factors

Alaska Statute 12.55.115 does not itself set out any factors sentencing courts should evaluate when they consider imposing parole eligibility restrictions beyond the statutory minimum.  Although we never have addressed the issue and it therefore comes to us as a matter of first impression, the court of appeals repeatedly has held that sentencing courts can restrict discretionary parole only when the statutory default term of parole eligibility "would be insufficient to protect the public and [e]nsure the defendant's reformation."[31]  The State argues that limiting consideration only to these

---

[31]    *See, e.g.*, *Lawrence v. State*, 764 P.2d 318, 321 (Alaska App. 1988) (quoting *Spencer v. State*, 642 P.2d 1371, 1377 (Alaska App. 1982)); *see also Bates v. State*, 258 P.3d 851, 866 (Alaska App. 2011); *Hinson v. State,* 199 P.3d 1166, 1173 (Alaska App. 2008); *Cheely v. State*, 861 P.2d 1168, 1181 (Alaska App. 1993); *Stern v. State*, 827 P.2d 442, 450 (Alaska App. 1992).  *Cf. Bloomstrand v. State*, 656 P.2d 584, 591 (Alaska App. 1982) (stating that amount of time reasonably required for rehabilitation is "among the *various* factors" sentencing courts can consider to restrict discretionary parole eligibility) (emphasis added).

two criteria is inconsistent with article I, section 12 of the Alaska Constitution, AS 12.55.005, and AS 12.55.115. Korkow responds that because parole eligibility restrictions are forward-looking and involve different considerations than sentencing, sentencing courts should focus only on protection of the public and rehabilitation. We agree with the State.

The Alaska Constitution states that "[c]riminal administration shall be based upon the following: the need for protecting the public, community condemnation of the offender, the rights of victims of crimes, restitution from the offender, and the principle of reformation."[32] Alaska Statute 12.55.005, the declaration of purpose for Alaska's sentencing and probation laws, incorporates the constitutional criteria by requiring consideration of a set of related factors when imposing a sentence.[33] As a matter of statutory interpretation, AS 12.55.005's list of factors governs the sentencing court's authority under AS 12.55.115 to restrict discretionary parole "as part of a sentence of imprisonment." The statutory language is clear and uncontradicted by any legislative history — a sentencing court must consider all the enumerated criteria in AS 12.55.005 when restricting discretionary parole as a part of a sentence, not just public protection and the defendant's reformation.

We recognize that not all of the AS 12.55.005 factors necessarily will be relevant in every parole eligibility determination, and that the most relevant factors often will be public safety and potential for rehabilitation. And we emphasize that a sentencing court may err by ignoring relevant factors or improperly weighing relevant factors when imposing a parole eligibility restriction beyond the statutory minimum. A

---

[32] Alaska Const. art. I, § 12.

[33] As noted earlier, these are "the *Chaney* factors." *See supra* note 12 and related text.

sentencing court must consider all of the statutory factors, determine which are relevant to the case, and support its overall sentence — including parole eligibility restrictions — with expressly articulated reasons backed by substantial evidence.[34]

### E.    Parole Restriction In This Case

The State argues that Korkow's parole restriction was not clearly mistaken in light of the 33-year default eligibility restriction and the sentencing court's discretion to restrict Korkow's parole eligibility for the entire 99-year term.  Korkow argues that his parole eligibility restriction is outside the permissible range based on "comparison" to other cases.  Korkow also argues that the sentencing court did not make sufficient findings supported by substantial evidence to impose the restriction.

Korkow's attempt to show his sentence is clearly mistaken by comparing it to sentences in other cases must fail.  As the court of appeals has noted, "affirmance of a sentence on appeal means only that . . . the sentence is not excessive; it does not set a ceiling [or a floor] on sentences in similar cases."[35]  We also have cautioned that benchmarks based on prior cases "are not to be used as inflexible rules but rather as historically-based starting points for analysis in individual cases."[36]  Because Korkow's

---

[34]    *See Jackson v. State*, 616 P.2d 23, 25 (Alaska 1980) (directing sentencing court to articulate reasons for restricting parole eligibility); *Qualle v. State*, 652 P.2d 481, 486 (Alaska App. 1982) (holding restriction on parole eligibility in absence of findings supported by substantial evidence was clearly mistaken).

[35]    *Hurn v. State*, 872 P.2d 189, 199-200 (Alaska App. 1994).

[36]    *State v. Hodari*, 996 P.2d 1230, 1237 (Alaska 2000).

sentence is within the broad permissible range of reasonable sentences,[37] we will not reject the sentencing court's restrictions for differing from those in other cases.

Korkow's arguments that the sentencing court made insufficient findings supporting the parole restriction and that the findings were not supported by substantial evidence also are unavailing. The sentencing court considered relevant *Chaney* factors in fashioning its overall sentence and entered specific findings that the parole restriction was necessary to protect Korkow's children and society at large for an extended period of time and was appropriate due to the "severity of the case" and Korkow's lack of remorse and concern. The record is replete with evidence that Korkow's crime was atrocious. It is undisputed that Korkow's children were present in the home. Korkow declined to participate in the pre-sentence report, and he made no statements during allocution indicating remorse or concern. We therefore hold the 50-year parole restriction made part of Korkow's sentence was not clearly mistaken.

## V.   CONCLUSION

We REVERSE the court of appeals' ruling that the parole restriction was excessive and REMAND for re-institution of the original sentence.

---

[37]     *See Colgan v. State*, 838 P.2d 276, 279 (Alaska App. 1992) (upholding 99-year restriction); *accord Alexander v. State*, 838 P.2d 269 (Alaska App. 1992); *Washington v. State*, 828 P.2d 172, 175 (Alaska App. 1992); *Stern v. State*, 827 P.2d 442, 450 (Alaska App. 1992).